# Richmond

## PEGGY ARMSTEAD

### v.

## EDGAR JAMES

August 30, 1979.

Record No. 771852.

Present: I'Anson, C. J., Carrico, Cochran, Harman, Poff and Compton, JJ.

*William M. Macali* (*James T. Wood; Stone, Bland and Wood,* on brief), for appellant.

*C. F. Hicks* (*Martin, Hicks & Ingles, Ltd.,* on brief) for appellee.

PER CURIAM.

Plaintiff Peggy Armstead was injured in July of 1975 in Williamsburg when the motor vehicle in which she was a passenger collided with another driven by defendant Edgar James. Plaintiff appeals from a judgment entered on a jury verdict in her favor for $2,000, an amount which she claims was inadequate. The dispositive issue, however, is whether, as plaintiff also claims, the trial court misdirected the jury. We think that it did and reverse.

Defendant admitted liability so plaintiff's evidence adduced at trial was limited to the issue of damages. Defendant offered no evidence.

Testimony revealed that the plaintiff sustained a blow to her right elbow and to her head at the time of the accident. The elbow became tender and she experienced some limitation of motion shortly after the accident. X-rays of the elbow revealed no fracture and the injury was initially diagnosed generally as "soft tissue damage from a direct blow" and specifically as a contusion of the elbow and left cheek. Daily warm soaks to the elbow and "range of motion" exercises were prescribed as treatment for the injury. Plaintiff's condition improved and within a month of the accident she was permitted to return to her regular employment cleaning guest rooms for Colonial Williamsburg. When seen by her physician about one month after her return to work the plaintiff "still had discomfort in the elbow and was unable to straighten it out."

When next seen by her physician about 13 months after the accident, the plaintiff's elbow was still aching and the limitation of motion had increased. The injury was then diagnosed as a "severe capsule or ligament injury of the elbow, which had resulted in this developing contracture of her arm; contracture meaning inability to move it completely." The physician next saw plaintiff in September of 1977, three days before the trial. He was "surprised" to find "even more" limitation of extension of the arm, stating that she had developed "another 20 degrees of contracture of that elbow." The physician testified that plaintiff had a more severe ligament injury than he had initially thought and that she probably had a momentary dislocation of the elbow at the time of the accident. He opined that plaintiff had a permanent partial impairment of 15 per cent of the right elbow and that in the future she would probably "have some further contracture."

Plaintiff contends that the trial court erred in refusing to include in the main instruction on damages a paragraph which would permit the jury to fix a monetary value on: "Any . . . deformity resulting to her and any humiliation and embarrassment associated therewith." The court below, agreeing with defendant's argument, ruled that the evidence did not support a finding that plaintiff had suffered a "deformity," adding "[t]here's certainly no testimony of humiliation or embarrassment or anything of that kind even associated with carrying her arm as she says she has." The plaintiff had testified, and demonstrated to the jury, that it became necessary for her to hold her right arm in a peculiar position. She said: "[W]hen I let it go down as far as I can, when I walk it bounces and causes it to swing."

■ We believe the trial court erred in determining there was insufficient evidence of a deformity. Not only was there the foregoing evidence that the injury caused the arm to be carried in a distorted manner, which we believe constituted a "deformity," but on at least three occasions during his testimony, the plaintiff's physician described the condition as a "deformity." He stated that, initially, he thought the "probability of increasing deformity" would have been "unlikely." Also, he indicated that physical therapy would have been considered as treatment if he had realized there "was going to be a progressive deformity." Finally, he said that in fixing a percentage disability rating for plaintiff, "[a]s you get more deformity," more limitation of motion results, thus increasing the amount of disability.

■ The trial court also erred in requiring, as a condition to including the foregoing paragraph in the damage instruction, direct testimonial evidence of humiliation and embarrassment associated with the deformity. Under similar facts involving a leg injury, we held in

*Beasley* v. *Bosschermuller,* 206 Va. 360, 367, 143 S.E.2d 881, 887 (1965), that with evidence of a deformity the jury could have properly concluded, without being presented with direct evidence on the subject, that plaintiff's injuries were a source of humiliation and embarrassment to him. We thus decided that the trial court properly included such an element in the damage instruction. *See Swersky* v. *McPeek,* 214 Va. 253, 199 S.E.2d 507 (1973), in which we held that without evidence of a deformity, it was improper to allow the jury to assess damages for humiliation or embarrassment when there was no direct evidence that plaintiff's injuries had such effect.

■ We also agree with another of plaintiff's contentions which was that the trial court erred in giving an instruction allowing the jury to find that plaintiff had failed to mitigate her damages. The instruction read, in part, that if the jury believed from the evidence that "the plaintiff, after she was injured, failed to exercise reasonable care and diligence in an attempt to lessen the resulting damage to her, and that such failure enhanced her damages, then she cannot recover for such enhanced or increased damage." Defendant argues that the giving of such instruction was proper because the plaintiff failed to follow her physician's orders in that she did not properly exercise the right arm and failed to fill one scheduled appointment with her physician. We disagree.

The evidence was utterly insufficient to permit the jury to find that the plaintiff had failed to use reasonable care to follow the order to exercise. She testified that up to the time of trial she had been regularly exercising the arm "three or four times a day." She demonstrated to the jury the manner in which she performed the exercises, stating: "A lot of times I just work on it, you know, up and down or I'll catch something and you know, hold on and push up, from the bottom (indicating)." From defendant's comments on brief and at the bar, it is obvious that defendant is of opinion, based on the demonstration, that what the plaintiff considered to be "exercise" was nothing more than an inadequate effort which accomplished nothing. Nevertheless, the instruction was premised on a failure to use *reasonable care* to lessen the damage caused by the accident and the record is devoid of any evidence that the plaintiff failed to use reasonable care to manipulate the arm, albeit she may have made the effort in an apparently imperfect manner.

It is true, as defendant asserts, the physician stated on cross-examination that increased limitation of motion suggested that "more exercise would have been of benefit." But the physician admitted that he had "no knowledge" that plaintiff failed to perform the exercises which

he prescribed. It is also true, as defendant argues, that plaintiff failed to keep one regularly scheduled appointment with her physician. But the missed appointment was not for the purpose of examination and treatment; it was for evaluation so the physician could write "a medical-legal letter." The foregoing bits of evidence, therefore, were insufficient to warrant giving the mitigation-of-damages instruction.

Finally on this issue, defendant relies on *Brown* v. *Huddleston,* 213 Va. 146, 191 S.E.2d 234 (1972), in which we approved the trial court's action in giving such an instruction in a personal injury case in which the jury awarded plaintiff $1500 damages. In that case, within 17 days of the motor vehicle accident, the plaintiff's treating physician could find nothing physically wrong with her. Nevertheless, plaintiff thereafter visited another physician 33 times before the date of that trial, held almost three years after the accident, complaining of pain in her neck, hips and lower spine. At trial, plaintiff claimed special damages of $6420. Under those facts, this court said it was not error to grant an instruction on the duty to minimize damages because "the instruction merely permitted the jury to disallow those items of damage which it found not reasonably related to the accident." 213 Va. at 148, 191 S.E.2d at 235. But there, unlike this case, the evidence supported the conclusion that the plaintiff had grossly exaggerated her damage claim. Furthermore, the court in *Huddleston* confined its approval of the use of the instruction specifically to the facts of that case.

We find no merit in plaintiff's other assignments of error. Accordingly, because of the trial court's failure to properly instruct the jury, the judgment order will be reversed and the case remanded for a new trial, limited to the issue of damages only.

*Reversed and remanded.*