GORDON WAYNE WALLEN, ET AL.

V.

GREGORY S. ALLEN, AN INFANT, ETC.

Record No. 821920

April 25, 1986

Present: All the Justices

*Wm. Rosenberger, Jr.* for appellants.

*C. Richard Cranwell (S. Amy Arbucho; Cranwell, Flora & Moore, P.C.*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal arises out of a collision between a tractor-trailer and a school bus which occurred on May 12, 1980, on Route 460 about five miles west of Appomattox. The bus was stopped, picking up school children, when the tractor-trailer, loaded with wood chips and weighing over 72,000 pounds, struck it from the rear. One child died as a result of injuries received in the collision and several others, including the plaintiff, were seriously injured. The principal issues on appeal are: (1) whether the court erred in admitting evidence concerning the force of the impact and the circumstances surrounding the accident after the defendants had conceded negligence, proximate cause, and severe injuries to the plaintiff; (2) whether there was sufficient evidence of wilful and wanton negligence to justify submitting the issue of punitive damages to the jury; and (3) whether the court erred in admitting evidence that a defendant owner of the tractor-trailer had entered a guilty plea to violations of federal statutes and regulations governing common carriers in interstate commerce.

The plaintiff, Gregory S. Allen, was nine years old at the time of the collision. He brought this action by his mother and next friend against Gordon Wayne Wallen, driver of the tractor-trailer, and M. J. Elder and K. W. Jones (partners trading as Elder and Jones), the owners of the tractor-trailer and Wallen's employers. Because of local publicity concerning the collision, the defendants moved for a change of venue. The motion was denied and the case was set for jury trial on July 22, 1982.

After the jury was selected but before opening statements were made, counsel for the defendants, in chambers, made certain motions *in limine*, stating:

If Your Honor please, the Defendants now state on the record — admit liability for compensatory damages; that is the pain and suffering and the losses that this young man has sustained and move to exclude any evidence relative to the accident because it would be prejudicial to the Defendants because of all of the publicity that this has had in the county.

We admit that he had a severe fracture of the leg for which he was treated by Dr. Hopkins, and we are ready to stipulate that his medical and hospital expenses have totaled $9,309.01.

At the same conference, defense counsel moved to exclude any evidence relating to punitive damages. Plaintiff's counsel responded that he did not consider the truck driver, Wallen, guilty of wanton negligence and that the plaintiff did not seek punitive damages against him, but that the plaintiff would contend that Elder and Jones were guilty of wanton negligence in hiring and retaining an incompetent employee and in entrusting the tractor-trailer to him. The court ruled that evidence of the owners' negligent hiring and entrustment would be admitted, subject to the defendants' right to move to strike it if it should prove insufficient to go to the jury on the issue of punitive damages. Defense counsel preserved his objection, observing that such evidence would so prejudice the jury against the defendants that, even in the event the court should later strike that evidence, it would be impossible to cure the prejudice. The court denied the motions *in limine* and the trial proceeded.

At the close of the plaintiff's case and at the close of all the evidence, defense counsel moved to strike all evidence relating to punitive damages and to submit the case to the jury only on the issue of compensatory damages. The court denied the motion. The plaintiff offered an instruction submitting to the jury the issue of punitive damages against the defendant Jones only, which the court granted over Jones' objection. The jury returned verdicts of $50,000 compensatory damages against all defendants and $50,000 punitive damages against the defendant Jones.

According to the undisputed evidence, the plaintiff, Gregory Allen, was sitting near the rear of the bus when the tractor-trailer struck it. He suffered a compound, comminuted fracture of the left tibia and fibula so extreme that his left leg was nearly severed below the knee. Despite the resulting trauma, he remained conscious and experienced much pain and mental suffering. Extensive surgical procedures saved the leg, although it had some residual impairment at the time of trial. The result, however, was a half-inch discrepancy in the length of Gregory's legs, which might improve, stay the same, or worsen with growth. There was, therefore, an indication that further surgery would be required about three years after trial.

## A.   COMPENSATORY DAMAGES.

The defendants, having conceded liability, made no objection to the medical evidence or to the testimony of Gregory's mother and

brother, who described his condition after the accident. The defendants introduced no evidence to refute or mitigate the plaintiff's evidence in support of compensatory damages except the testimony of a teacher who stated that Gregory was doing well in school two years after his injury.

The defendants objected strenuously, however, to the testimony of a state trooper, who described the accident scene and introduced photographs of the wreckage. They also objected to the testimony of the driver, Wallen, who testified as an adverse witness to the facts of the collision and objected to the testimony of another motorist who saw it occur. On appeal, the defendants argue that their concession of liability, their stipulation that the plaintiff sustained "severe injuries," and their failure to contest his evidence relating to compensatory damages, rendered the evidence concerning the force of impact and the circumstances surrounding the collision irrelevant and unnecessary. They contend that its only purpose was to inflame the jury and inflate both compensatory and punitive damages.

In *Eubank* v. *Spencer*, 203 Va. 923, 128 S.E.2d 299 (1962), a case on which both sides rely, we said:

> When an issue has been taken from a case by an unqualified admission of liability it is error to receive evidence which is material solely to the excluded matter. . . . This does not mean, however, that an admission of liability precludes a plaintiff in an action for personal injuries from showing how the accident happened if such evidence is material and relevant to the question of damages. Where liability has been admitted and the only issue to be determined is the quantum of damages, the force of the impact and the surrounding circumstances may be relevant to show the extent of plaintiff's injuries.

203 Va. at 925-26, 128 S.E.2d at 301-02 (citations omitted). We think the court correctly admitted the plaintiff's evidence of the details surrounding the collision and the force of the impact. Although the plaintiff's physical injuries and pain were conceded, they do not constitute the whole sum of the compensatory damages to which he was entitled. The court, properly and without objection, instructed the jury that the plaintiff was also to be compensated for any mental anguish suffered in the past or reasonably

to be expected in the future as a result of the defendants' negligence. The surrounding circumstances tending to show the jury the severity of the impact were relevant to an assessment of the trauma to which the plaintiff had been subjected.

The jury may properly infer mental anguish as well as physical pain from the circumstances of the injury, including the violence with which it was inflicted. *Bruce* v. *Madden*, 208 Va. 636, 639-40, 160 S.E.2d 137, 139-40 (1968). A defendant has no right to exclude evidence relevant to a complete assessment of a plaintiff's compensatory damages by conceding liability for them even when he admits that they were serious or "severe." The jury has the responsibility of translating unliquidated damages into a precise monetary equivalent. The jury's task of fixing a just compensation for pain, suffering, and mental anguish is difficult and sensitive. It is entitled to all relevant information offered on the subject which meets the requirements of the rules of evidence. Because the trial court committed no error in admitting this evidence, and because this question is the only serious challenge made by the defendants to the verdict for compensatory damages,[1] we will affirm the judgment with respect to the award of compensatory damages.

## B. PUNITIVE DAMAGES.

The defendant Jones' challenge to the award of punitive damages raises more difficult questions. The evidence offered in support of plaintiff's contention that Jones was guilty of wanton negligence may be summarized as follows: Elder and Jones were brothers-in-law who formed a partnership to operate a trucking business. Elder was an investor and silent partner who left the daily management of the business to Jones. Jones hired drivers who operated the partners' tractor-trailers in both interstate and intrastate commerce.

In May 1980, the partners were engaged in hauling loads of wood chips from Clarksville, Va. to Roanoke Rapids, N.C. and to Big Island, Va. They employed several drivers to load the trailers with wood chips, using a front-end loader, and to drive the loaded

---

[1]Defendants made a perfunctory argument on brief that the award of compensatory damages was excessive, but did not pursue the point in oral argument. Whether intentionally waived or not, the argument has no merit in light of the severity of the plaintiff's injuries.

tractor-trailers to their destinations. The drivers were paid about $30 per load, which was substantially below union wage scales for comparable work.

Jones employed Wallen about April 1, 1980, after seeing him operate another employer's equipment. Wallen was in good health and had a clear traffic record at the time of the accident. He was 28 years old at the time of trial. Jones had no knowledge of any disabilities, behavior traits, or history which might have affected Wallen's fitness to drive, and there is no evidence that any such factors existed. Before Jones employed him in April 1980, Wallen had only two weeks experience in operating five-axle, eighteen-wheel equipment of the kind he was driving at the time of the collision. He had operated three-axle, ten-wheel equipment for six months before Jones hired him.

When Jones hired Wallen, he examined Wallen's license, but did not notice that it was an "operator's license, class A," instead of a "chauffeur's license, class A." A driver of a vehicle, owned by others, having more than three axles and a gross weight in excess of 40,000 pounds, is required to have a "chauffeur's license, class A." Wallen's license would have been sufficient for the operation of equipment the size and weight of that involved in the collision if Wallen had owned the equipment.

Wallen testified that he arose from sleep on May 11, 1980, at about 1:00 p.m. and reported to work at Charlotte Courthouse at 9:00 p.m. He picked up an empty trailer there, which he drove to Clarksville. He exchanged the empty trailer for a loaded one which he drove to Roanoke Rapids, North Carolina, about 75 miles from Clarksville. He unloaded the trailer in Roanoke Rapids. On his return trip to Virginia he had trouble with the tractor-trailer's lights, which he repaired personally. After making the repairs, he went to sleep in the cab for three hours. He awoke at 5:00 a.m., May 12, and drove the empty trailer to Clarksville. He uncoupled the trailer there, attached another trailer, and drove to Charlotte Courthouse where, using a front-end loader, he loaded it with wood chips.

Wallen then left Charlotte Courthouse and headed for Big Island, Virginia. As he passed through Appomattox, he briefly saw the school bus ahead, but testified that he never saw it again until he struck it. He never saw its brake lights or flashing lights, which were operating while it was stopped. Route 460 was a four-lane highway at that point, straight and on a slight downgrade. The

weather was clear, the pavement was dry, and visibility westbound was about 1200 feet for a motorist approaching the stopped school bus.

The plaintiff argues that Wallen had driven over 150 miles, had performed the physical labor of coupling and uncoupling four trailers, and had loaded a trailer with many tons of wood chips using a front-end loader after having only three hours sleep during the last eighteen hours. The jury, says the plaintiff, could infer that a competent and experienced driver would not, while so fatigued, have undertaken the trip to Big Island, operating such heavy equipment.

On July 21, 1981, Elder and Jones were charged in the United States District Court for the Western District of Virginia with 26 misdemeanor counts involving violations of federal regulations governing common carriers operating in interstate commerce. They entered guilty pleas to all counts and were jointly fined $2,500.00. Specifically, the information charged them with knowingly and wilfully permitting drivers to make interstate hauls "without first maintaining driver qualification files for said drivers, including a current, valid Medical Examiners Certificate, a driver's road test, a driver's written examination, a driver's employment examination, a driver's employment application and the annual review of the driver's driving record in violation of 49 CFR 391.51; 49 USC 11914(b)." One of the guilty pleas related to a count covering Wallen's haul to Roanoke Rapids, N.C., on May 11-12, 1980, immediately preceding the intrastate haul which culminated in the collision. Over the defendants' objection, the court permitted the plaintiff to read the federal information relating to that count and to prove that Jones had entered a guilty plea thereto.[2]

The plaintiff argues that the federal regulations are clearly designed to insure that only competent and qualified drivers will operate heavy equipment on the highways, that the jury might infer from Wallen's conduct that he was incompetent and unqualified, and that Jones' guilty plea was an admission that he had neglected those precautions required by law for the protection of the public against incompetent and unqualified drivers. The plaintiff says that if Jones had followed the federal regulations, he

[2]The court excluded, as irrelevant, evidence concerning Jones' guilty pleas to counts not involving Wallen.

would have detected Wallen's unfitness and averted the accident which resulted from it.

■ Granting the plaintiff the benefit of the foregoing, and all other favorable inferences to be drawn from the evidence offered in support of punitive damages, we find no support for a finding of wanton negligence on Jones' part. Wallen had limited experience, but that did not render him unfit to drive. Every experienced driver begins with his first haul. Wallen had no history and no personal characteristics which, if discovered by Jones, would have revealed any degree of unfitness. Jones was not merely ignorant of a danger; there was in fact no danger which prudent inquiry might have disclosed.

■ Although the jury might find Jones negligent in not ascertaining that Wallen lacked the license required by law, the license Wallen had would have been sufficient if Wallen had owned the tractor-trailer, and the absence of the required license had no bearing upon the collision. Jones might, as plaintiff argues, have subjected Wallen to more rigorous road tests before hiring him, but there is no evidence that any amount of testing would have revealed any unfitness on Wallen's part.

■ Punitive damages do not arise from ordinary negligence. They may be recovered only in cases where a tort has been committed under certain aggravating circumstances. Their primary purpose is to warn others and punish the wrongdoer "if he has acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations. Wilful or wanton conduct imports *knowledge and consciousness that injury will result* from the act done." *Giant of Virginia, Inc.* v. *Pigg,* 207 Va. 679, 685-86, 152 S.E.2d 271, 277 (1967) (emphasis added) (citations omitted). Taken in the light most favorable to the plaintiff, the evidence of Jones' negligence falls far short of that criterion.

## C. GUILTY PLEA.

■ Similarly, there is no indication that Jones' violation of the federal regulations, to which he entered a guilty plea, conduced in any way to the collision. Jones' offense consisted of his failure to maintain federally-required "drivers' qualification files." But the most meticulous record-keeping would not have disclosed any evidence of Wallen's unfitness. Indeed, upon the record before us, the

collision would not have been averted if Jones had filled a warehouse with such files.

■ We conclude that, because there was no evidence of underlying unfitness on Wallen's part which might have been discovered by due diligence on Jones' part, no causal connection exists between Jones' negligence in failing to maintain the federally required files and the plaintiff's injuries. Accordingly, the evidence of Jones' guilty plea should have been excluded as irrelevant.

## D.  CONCLUSION.

■ Because in our view, as stated above, the breaches of duty which the jury might have attributed to Jones could amount to no more than ordinary negligence, we will reverse the award of punitive damages and enter final judgment here for the compensatory damages alone.

*Reversed in part, affirmed in part and final judgment.*