## CIRCUIT COURT OF LOUDOUN COUNTY

Neuharth et al.

v.

Quinn et al.

March 12, 1991

Case No. (Law) 10578

By JUDGE THOMAS D. HORNE

This case comes before this Court on the Quinns' Motion to Disqualify John Flannery, II, Esq., as counsel for the Neuharths. Mr. Flannery was retained by the Neuharths to represent them after their former counsel, Nixon & Hargrave, had withdrawn at the Neuharths' request. After due consideration of the Quinns' motion, the Neuharths' Motion in Opposition, Mr. Flannery's Sworn Opposition to Motion to Disqualify, and testimony and exhibits offered on behalf of the parties, the Court finds that Mr. Flannery is disqualified from this case after discussion of the issues stated below.

A. *Mr. Quinn's alleged meeting and discussion of the details of this case with Mr. Flannery.*

As in *State ex rel. Taylor Associates v. Nuzum*, 330 S.E.2d 677, 680 (W. Va. 1985), the Court is "faced here with a tempest in a teapot." Mr. Flannery contends

that the Quinns never approached him about this case. "Nothing like that ever happened," he alleges.

On the other hand, the Quinns allege that Mr. Quinn approached Flannery, whom Mr. Quinn considered to be his lawyer, after being served with the suit papers in the instant action and that Mr. Flannery reviewed the suit papers and entered into a discussion of the matter surrounding the law suit.

Mr. Flannery is adamant that no such conversation ever transpired. The court in *Taylor* held that because Mrs. Taylor initially contacted Mr. Underwood (the attorney) and "alleged" she revealed to him all the information she had about the case, Mr. Underwood was barred from representing Mrs. Taylor's opponents "without compromising either the representation of his new clients or sacrificing his duty of confidentiality to Mrs. Taylor." 330 S.E.2d 677, 681, *citing* DR 4-101(B). Note that the court did not find that Mrs. Taylor actually *did* reveal information to Mr. Underwood. The court based its ruling on Mrs. Taylor's allegations. However, the Court recognizes that in *Taylor*, Mr. Underwood had "no recollection" of such a conversation.

The *Virginia Legal Ethics Opinions* are fraught with caution against an attorney accepting a case in which a former or current client has related confidential information concerning that matter to the attorney. For example, it is:

> improper for an attorney to accept a case where a member of the firm had previously consulted with opposing party concerning the possibility of representation unless the opposing party consents to such representation.

Ethics Opinion Number 318, DR 5-105(D).

Once a mere potential or actual client discusses litigation with an attorney, the court need not find that the attorney in fact obtained confidential information. Communication of confidential information is simply presumed. *NCK Organization LTD v. Bergman*, 542 F.2d 128, 134 (2d Cir. 1976) (court may assume that attorney attains confidential data on former client if representation occurs in substantially related area); *Richardson v.*

*Hamilton International Corporation*, 469 F.2d 1382, 1385 (3d Cir. 1972) *cert. den.*, 411 U.S. 986 (former client need not prove attorney possessed confidential information); *Emile Industries v. Patent, Inc.*, 478 F.2d 562, 565 (2d Cir. 1973) (same); *Cord v. Smith*, 338 F.2d 516, 518 (9th Cir. 1964) (court may disqualify attorney from representing new client in substantially related matter even if no proof exists that attorney has confidential information); *see also* Castle and Foster, *The New Model Rules: Conflicts and Lawyer Disqualification*, Nat'l L. J., Feb. 6, 1984.

The Court cannot conclude upon the evidence before it that such a discussion ever occurred and, therefore, cannot disqualify Mr. Flannery for this reason.

B. *Even if the Quinns did not discuss this particular case with Mr. Flannery, should he be disqualified because he may have obtained pertinent confidential information from the Quinns, during his representation of them on prior matters, that will aid him in representing the Neuharths?*

> The mere fact that a lawyer represented a person who is now the adverse party in a suit brought by the lawyer on behalf of another client is not sufficient to warrant disqualification of the lawyer on ethical grounds. However, a violation of DR 4-101(B) might result if the lawyer possessed confidential information obtained from the first client.

Legal Ethics Opinion 441, DR 5-105(C), (D).

Mr. Flannery notes that his representation of the Quinns on several other occasions should not preclude him from representing an adverse party now. However, it has been said that "it is the potential manifestation of the conflict with which [the court is] concerned." *In re Stancraft Corp.*, 39 B.R. 748, 751, n. 5 (Bkrtcy. E.D. Va. 1984), 10 Collier 2d 1061, *citing In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979). Therefore, "doubts about the propriety of representing clients with potentially adverse interests should be resolved against continuing or accepting the representation" of another client. *In re Stancraft Corp.*, 39 B.R. 748, 754.

Though Mr. Flannery may no longer represent the Quinns, he is still bound by an attorney's obligation to preserve a client's confidences. Ethical Consideration EC 4-6. Mr. Flannery's ongoing relationship with the Quinns over several years and his representation of them in writing their wills, in *Miller Brothers Construction Co. v. Thomas D. Quinn, et al.*, Chancery No. 11773 (Loudoun County Cir. Ct.), in *Piedmont v. Quinn*, Civ. Action No. 85-CP-26-2126 (South Carolina), and in releasing Mr. Quinn from Springwood, unfortunately raises the specter of conflict because of potential disclosures.

An attorney should not accept or continue employment if the interests of another client *may* impair the independent professional judgment of an attorney. *In re Stancraft Corp.*, 39 B.R. 748, 753; DR 5-105 (1983). In the instant case, substantial doubt can be raised as to whether Mr. Flannery's independent professional judgment will be preserved despite his relationship with both parties on the opposite sides of the current conflict. Taken in conjunction with the other facts in this case, these prior representations and the potential access to confidential information serve to disqualify Mr. Flannery.

C. *Should Mr. Flannery be disqualified if the Quinns have shown that there is a substantial relationship between his prior representation of them and the issues raised in his representation of the Neuharths?*

The existence of an attorney-client relationship and the concomitant presumption of an exchange of confidences is not enough to require disqualification. In addition to the foregoing, there must be a substantial relationship between the matters in that the information must be relevant to the pending litigation. *In re Chantilly Construction Corp. v. John Driggs Co., Inc.*, 39 B.R. 466, 472 (Bkrtcy. E.D. Va. 1984) *citing Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978); *T. C. Theatre v. Warner Bros. Picture*, 113 F. Supp. 265, 269 (S.D. N.Y. 1953); *In re Buchanan*, 25 B.R. 162, 169-70 (Bkrtcy. E.D. Tenn. 1982).

Mr. Flannery asserts that though he previously represented the Quinns, those representations dealt with matters

that are not substantially related to the present matter and, therefore, he should not be disqualified.

The Virginia Code of Professional Responsibility (C.P.R.) apparently does not contain an explicit procedural disqualification device. However, judicial precedent does allow a former client to disqualify an attorney if the client can show that a substantial relationship exists between the subject matter of the previous and present representations. 41 Wash. and Lee L. R. 1577, 1592, *citing* DR 5-105(D) (1983); Outline of Presentations Third Annual Disciplinary Conference, Richmond, Va. (Sept. 7, 1983), Comments by Albert Turnbull on Canon 5, at 8-9) (describing procedure for attorney disqualification by former client in conflicts of interest cases.)

The same "matter" occurs when both the prior or current representation involve similar facts. *General Motors Corp. v. City of N.Y.*, 501 F.2d 639, 650-52 (2d Cir. 1974). Matters are "substantially related" if the issues involved are "identical" or "essentially the same." *T. C. Theatre*, 113 F. Supp. 265.

Though Mr. Flannery contends that the case at hand is not substantially related to his prior representations, the Quinns respond that his representations allowed him to develop a strong familiarity with the Quinns' financial position, real estate holdings, how such holdings are organized, and various professional and personal susceptibilities of Mr. Quinn.

Mr. Flannery's alleged knowledge of the Quinns' financial status may give the Neuharths an unfair advantage. The Neuharths have claimed punitive damages against the Quinns. Punitive damages are awarded to punish a defendant for willful or wanton behavior. *Warren v. Allen*, 231 Va. 289, 343 S.E.2d 73 (1986). In order to know what a sufficient sum is to "punish" a defendant, a familiarity with that defendant's finances is crucial. Mr. Flannery may have had several opportunities to gain intimate familiarity with the Quinn family finances. He drafted their wills. He represented them when they were having difficulty paying for the plane in the *Piedmont* case. He represented them through their financial difficulties in the *Miller Brothers* case. In addition, Mr. Flannery alleges that, in the past, the Quinns failed to pay for his services on time. Mr. Flannery appears to be in a good position to know what

amount of punitive damages the Quinns could reasonably be expected to pay should they be held so liable. This information would give the Neuharths an unfair advantage if the case goes to a jury. The jury may hear and consider evidence of the defendant's financial standing in determining the amount of punitive damages. *Weatherford v. Birchett*, 158 Va. 741, 164 S.E. 535 (1932). It most obviously would give the Neuharths an apparent edge during any settlement negotiations that may be attempted.

It appears to this Court that there is enough evidence to support an allegation that Mr. Flannery may also be familiar with the boundary in question in this suit. The description of the property that contains the disputed boundary is recorded in Deed Book 998 at page 898, among the land records of Loudoun County, Virginia. While it is true that Mr. Flannery did not prepare the Bill of Complaint in the instant action, he has assumed representation and wishes to argue that the description in the deed book is incorrect. Yet, when Mr. Flannery represented the Quinns in the *Miller Brothers* case, he admitted in his answer that the description in Deed Book 998 at page 898 was, in fact, correct. Mr. Flannery has also admitted to drafting a proposed statement, though apparently not a legal document and not the subject of legal advice, regarding the Quinns' "planned development." The "planned development" included the area which contains the disputed boundary.

The confidences Mr. Flannery may hold appear to be more than just a familiarity with the workings and personality of the Quinns. *International Paper Co. v. Lloyd Manuf. Co.*, 555 F. Supp. 123, 132 (N.D. Ill. 1982) (familiarity with workings of corporation or the personality of its representatives insufficient to bar representation). Enough is alleged in the pleadings for the Court to find that a "patently clear" relationship may exist between Mr. Flannery's knowledge of the Quinns and the issues in the present case.

D. *Can Mr. Flannery be disqualified despite the fact that any confidences he may have obtained are now a matter of public record?*

Mr. Flannery asserts that even if he were privy to "secret" or confidential information, that this information is now a matter of public record because of the bankruptcy proceeding. Mr. Flannery implies that this may relieve him of the responsibility to protect that information, which is primarily financial.

However, public knowledge of a secret or confidence does not affect an attorney's responsibility to refrain from discussing confidential information with persons to whom the privilege of confidentiality extends. Ethical Consideration 4-2, 41 Wash. and Lee L. R. 1577, 1589, *citing* T. Schaffer, Remarks on Canon Four of the Revised Va. C.P.R. 1, 8 (July 29, 1983) (lawyer must preserve confidences even if substance of secret becomes public knowledge).

E. *Can Mr. Flannery be disqualified despite the fact that the Quinns may have waited an unreasonable period of time to make their motion?*

Mr. Flannery takes issue with the fact that the Quinns waited too long to make their motion to disqualify him. He suggests that this is merely a trial tactic to delay adjudication on the merits. A court should not, however, dismiss a motion to disqualify merely because it may have been a tactical move. Once the issue is raised, the court has an independent duty to resolve the matter. *In re Stancraft Corp.*, 39 B.R. 748, 752 (Bkrtcy. E.D. Va. 1984).

The court must balance the right of a party to retain the counsel of his choice and the substantial hardship which might result from disqualification against the public perception of and public trust in the judicial system. *In re Chantilly*, 39 B.R. 466, 468. *See, Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 58, 78 L. Ed. 158 (1932); *United States v. Smith*, 653 F.2d 126, 128 (4th Cir. 1981); *In re Asbestos Cases*, 514 F. Supp. 914, 925 (E.D. Va. 1981) (dicta). In the present case, the Court finds that the balance tilts in favor of disqualification.

F. *Should Mr. Flannery be disqualified because his represen-tation of the Neuharths raises an appearance of impropriety?*

An attorney is called upon by his profession "to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only profes-sional impropriety, but also the appearance of impropriety." Ethical Consideration 9-6.

> When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.

Ethical Consideration 9-2.

In this case, all doubts must be resolved against allowing Mr. Flannery to continue his representation of the Neuharths simply to promote public confidence in the legal system. Apparent conflict clouds the representation of the Neuharths by Mr. Flannery because of the intertwined relationship, on a personal and professional level, between Mr. Flannery and both parties. The only way to dispel the cloud of the "appearance of impropriety," which hangs over Mr. Flannery, in keeping with the spirit of C.P.R. Canon Nine, is to disqualify him from the case.