**Dallas MUSICK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 86–0073–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Sept. 27, 1991.

Lynn Lauderback, Kingsport, Tenn., Pat Cline, Norton, Va., for plaintiff.

E. Montgomery Tucker, U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

By Memorandum Opinion and Order dated June 26, 1991, this court found that the United States is liable for its negligence in injuring Dallas Musick. This matter is now before the court on the sole issue of damages. The plaintiff seeks a judgment in the amount of three million dollars ($3,000,-000). The United States denies any liability for damages. The court has jurisdiction over this action via 28 U.S.C.A. § 1346(b) (West 1976).

### FINDINGS OF FACT

On August 30, 1991, the court held a bench trial on the issue of damages. Based on the evidence presented at trial, the court makes the following findings of fact: On June 7, 1984, Musick was fifty-seven. He was self-employed in the lumber business and had been so employed for the previous thirty-four years. He planned to retire at age sixty-two.

Musick testified that his take home pay was forty thousand dollars. However, his counsel introduced income tax returns showing gross receipts of $40,908.00 in 1982 with a net profit of $7,546.00 (Plaintiff's Exhibit # 11) and $39,193.00 in 1983 with a net profit of $1,264.00. (Plaintiff's Exhibit # 12).

On June 7, 1984, Musick entered the Holston Valley Hospital for a head injury and multiple contusions, abrasions, and lacerations. On June 11, 1984, a CT scan showed an accumulation of subdural fluid. On June 21, 1984, the physicians elected to proceed with Burr holes for drainage. A subsequent CT scan showed further accumulation of air and fluid, and a subdural tap was performed. Musick remained confused but slowly improved until he was discharged on July 2, 1984. The final diagnosis indicated: 1) a cerebral contusion; 2) subdural fibroma, due to trauma; and 3) a fractured right scapula. (Plaintiff's Exhibits # 1, 9).

Musick testified that he does not remember the events of June 7, 1984, nor does he

remember anything which occurred while he was hospitalized.

Since leaving the hospital, Musick has complained of the following:

1) Musick characterized his hearing before the accident as "excellent." However, Musick testified that, since the accident, he has no hearing in his right ear and only twenty percent in his left ear. Musick also stated that he has "roaring" and "clicking" sounds in his ears which have resulted in trouble sleeping. Eva Nell Musick, the plaintiff's wife, and H. Edward Musick, the plaintiff's son, corroborated this testimony.

On August 13, 1984, Musick saw Dr. Paul F. Brookshire. Dr. Brookshire's examination revealed a complete nerve type hearing loss in the right ear and a severe nerve type hearing loss in the high frequencies in the left ear.

On February 11, 1985, Musick was examined by Dr. Claude H. Crockett. Dr. Crockett stated, "Apparently as a result of the accident he has a total sensorineural hearing loss in the right ear and a moderate sensorineural hearing in the left ear." Dr. Crockett noted, "Since his hearing in the left ear falls well below that of the normal range, the patient could certainly benefit from a hearing aid evaluation and possible hearing aid dispensation."

In his February 25, 1985 report, Dr. A. Sheldon Gelburd noted that Musick faced his left ear toward him in an effort to better hear. (Plaintiff's Exhibit # 2).

After an April 6, 1987 examination, Dr. Russell D. McKnight noted that Musick had deafness most marked on the right as a result of the injury. (Plaintiff's Exhibit # 4(a)). McKnight also noted this in his August 14, 1991 report. (Plaintiff's Exhibit # 4(b)).

Musick was examined by Dr. Kenneth L. Carrico on October 22, 1987. Dr. Carrico noted that Musick is totally deaf in his right ear and has a twenty percent hearing loss in his left ear. (Plaintiff's Exhibit # 5).

Following a November 18, 1987 visit, Dr. Earl K. Wilson observed that he had to talk loudly in order for Musick to hear him.

Dr. Wilson stated that the hearing loss was post-traumatic, secondary to the head injury, and greater in the right ear than in the left. (Plaintiff's Exhibit # 6(a)). Dr. Wilson also noted the hearing difficulty following a May 23, 1989 visit and stated that the loss was related to the injury and would not improve. (Plaintiff's Exhibit # 6(b)).

In his August 14, 1991 report, Dr. McKnight wrote that Musick's "severe deafness interferes with the interview situation and I have to shout at him to be understood." (Plaintiff's Exhibit # 4(b)).

At trial, Musick appeared to be able to hear counsel's questions by positioning himself so that his left ear was toward the examiner.

2) Musick testified that at the time of the accident his teeth were "excellent." However, over the three years after the accident, he began to lose his teeth. He testified that his gums continue to hurt. This testimony was corroborated by the plaintiff's wife and son.

Following a May 23, 1989 examination, Dr. Wilson noted Musick's tooth loss and opined that this condition was, at least historically, related to the injury. (Plaintiff's Exhibit # 6(b)).

In an August 23, 1991 letter, Dr. Howard E. Quillen reported that on April 23, 1984 he desensitized a tooth for Musick. Musick returned on December 11, 1984 complaining of two teeth that needed pulling. Dr. Quillen was unable to anesthetize Musick, so the teeth were not pulled. Dr. Quillen has not seen Musick since. (Plaintiff's Exhibit # 7).

3) Musick testified that before the accident he had no problems smelling or tasting. Since the accident, he cannot smell or taste anything. The plaintiff's wife and son corroborated this testimony.

On November 18, 1987, Dr. Wilson administered a smell identification test which showed that, out of three smells, Musick could smell none. Dr. Wilson concluded that the loss of smell was secondary to the head injury and that it would not improve. (Plaintiff's Exhibit # 6(a)). Wilson again noted the loss of smell after a May 23, 1989

visit, however, he noted "taste is intact." (Plaintiff's Exhibit # 6(b)).

In his August 14, 1991 report, Dr. McKnight noted neurological defects in terms of loss of smell and taste. Dr. McKnight's report also states that Musick weighed 150 pounds. Musick alleged this reflected a weight loss of fourteen pounds over the last three or four months. Dr. McKnight attributed this to lack of appetite and interest in food due to loss of smell and taste. (Plaintiff's Exhibit # 4(b)).

However, Mrs. Musick testified that the plaintiff eats six to eight meals a day. Also, in his April 6, 1987 report, Dr. McKnight had noted that, although Musick lost thirty-six pounds while in the hospital, he had regained the weight and presently weighed 150 pounds. (Plaintiff's Exhibit # 4(a)). Dr. Carrico also noted that Musick had lost thirty-six pounds, but had regained it. (Plaintiff's Exhibit # 5). Similarly, Dr. Wilson's November 18, 1987 report stated that most of Musick's weight loss occurred while he was hospitalized. (Plaintiff's Exhibit # 6(a)).

4) Musick testified that since the accident his buttocks and lower legs get numb if he sits for any length of time. He also reported that his right hand aches. His wife and son corroborated this testimony.

On April 6, 1987, Dr. McKnight reported, "Clinical impression here is that this man is suffering from a traumatic head injury with a cerebral injury which is producing a hyperreflexia in his legs and reduced touch in his legs and feet." (Plaintiff's Exhibit # 4(a)).

After his November 18, 1987 visit, Dr. Wilson noted that "reflexes are hyperactive, particularly at the knees." (Plaintiff's Exhibit # 6(a)).

In his August 14, 1991 report, Dr. McKnight noted that Musick has neurological defects in terms of loss of power in his right grip and numbness in feet. (Plaintiff's Exhibit # 4(b)).

5) Musick also testified that he has headaches. He stated that these occur only on the right side, and he characterized them as throbbing.

Dr. McKnight noted that Musick suffers from a post traumatic stress disorder and, in this respect, continues to complain of recurrent headaches. (Plaintiff's Exhibit # 4(b)).

6) There was also evidence of a decrease in mental capacities. Musick has not been able to work since the accident and has drawn Social Security benefits for full disability beginning on the date of the accident. (Plaintiff's Exhibit # 3).

On February 20, 1985, Dr. Gelburd examined Musick and obtained a full scale IQ of 77. Gelburd considered these scores to be regressions of previous capacity, which was estimated to have been above the 85 IQ level. This was suggestive of some intellectual deterioration. Dr. Gelburd opined, "The protocol is suggestive of brain impairment, as evidenced by impaired ability to abstract, impaired short term memory, clouded thinking, evidence of confusion... He could not adapt to and function in any ordinary work setting at this time. However, he is capable of handling his own funds." (Plaintiff's Exhibit # 2).

On October 22, 1987, Dr. Carrico found a full-scale IQ of 82. The Bender–Gestalt, a test used for neurological assessments, was highly suggestive of cerebral damage. Dr. Carrico examined Musick again on November 3, 1987 noting a full scale IQ of 85 on the Luria–Nebraska scale, which corrects for age, education and intelligence. The results of testing confirmed the presence of cognitive impairment. (Plaintiff's Exhibit # 5).

In his November 18, 1987 report, Dr. Wilson stated, "The degree of forgetfulness that he describes may also be trauma related with a mild organic brain syndrome, although by bedside examination no definite deficits are realized." (Plaintiff's Exhibit # 6(a)). Following a May 23, 1989 examination, Dr. Wilson noted that Musick's lack of ability to work and function normally were related to the injury and would not improve. (Plaintiff's Exhibit # 6(b)).

In a August 14, 1991 report, Dr. McKnight stated that Musick has cognitive

difficulties related to his injury with severe impairment of new learning ability and memory retention. McKnight stated that Musick will never be suitable for employment and that he is not competent to handle his own affairs. (Plaintiff's Exhibit #4(b)).

7) Musick also complained about loss of vision. He informed Dr. Carrico that he did not wear glasses before the accident but now needs bifocals to read. (Plaintiff's Exhibit #5).

However, in his April 6, 1987 report, Dr. McKnight noted, "Vision is good without glasses." (Plaintiff's Exhibit #4(a)). On November 18, 1987, Dr. Wilson noted a visual acuity of 20/70 on the left and 20/50 on the right corrected. (Plaintiff's Exhibit #6(a)). On May 23, 1989, Dr. Wilson reported a visual acuity is 20/20 on the left and 20/50 on the right. (Plaintiff's Exhibit #6(b)).

In regard to all of the above, Musick testified that he has missed the pleasures which his respective senses gave him. He has also missed the active life he once led.

In addition to the problems described above, Mrs. Musick testified that, since the accident, her husband loses his temper two or three times a week. Mr. Musick has become increasingly belligerent toward her to the point that she moved to Gate City for a period of time. In addition, his hygiene has deteriorated and he bathes only once a week. The couple has not had intercourse since the accident.

Based on the information from Mrs. Musick, Dr. McKnight stated that Musick suffers from a paranoid state characterized by irritability, suspiciousness, confabulation, and apathy, all of which appears to be secondary to cerebral damage. (Plaintiff's Exhibit #4(a)).

In a August 14, 1991 report, Dr. McKnight stated that his opinion is that Musick suffers from post traumatic head injury, a post concussive personality syndrome and a post traumatic stress disorder. He additionally suffers from a psychotic illness as a result of his organic brain syndrome which causes him to have severe

marital paranoia and severe personal neglect. (Plaintiff's Exhibit #4(b)).

Following the testimony in the case, the parties stipulated to Musick's life expectancy. At the time of the accident, his life expectancy was 20.4 years. At trial, his life expectancy was 15.4 years. (Plaintiff's Exhibit #10). Musick also submitted medical bill totaling $21,862.70. (Plaintiff's Exhibit #8).

## CONCLUSIONS OF LAW

Under the Federal Tort Claims Act, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674 (West 1965). The law of the place where the act or omission occurs, in this case Virginia, governs the issue of liability as well as the issue of damages. 28 U.S.C.A. § 1346(b). However, punitive damages are not allowable. 28 U.S.C.A. § 2674.

Although the law of Virginia is applicable, a situation may arise in which damages ordinarily allowable under state law as "compensatory" are "in excess of those necessary to provide compensation for injuries and losses actually sustained." *Flannery v. United States*, 718 F.2d 108, 110 (4th Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984). "The question of the allowance of such damages is one of federal law." *Id.*

■ Under Virginia law, a plaintiff may recover for: 1) any bodily injuries which he sustained and their effect on his health according to their degree and probable duration; 2) any physical pain and mental anguish he suffered in the past and any that he may be reasonably expected to suffer in the future; 3) any disfigurement or deformity and any associated humiliation or embarrassment; 4) any inconvenience caused in the past and any that may be reasonably expected to occur in the future; 5) any medical expenses incurred in the past and any that may be reasonably expected to occur in the future; 6) any earnings he lost because he was unable to work at his calling; 7) any loss of earnings and lessening of earning capacity, or ei-

ther, that he may reasonably be expected to sustain in the future; and 8) property damage. *Bulala v. Boyd,* 239 Va. 218, 231, 389 S.E.2d 670, 677 (1990); *see also De-Wald v. King,* 233 Va. 140, 143, 354 S.E.2d 60, 61 (1987); *Doe v. West,* 222 Va. 440, 443–44, 281 S.E.2d 850, 851–52 (1981). Each of these elements will be discussed as they pertain to Musick.

### 1. *Bodily Injuries*

A plaintiff must prove "with reasonable certainty the amount of damages and the cause from which they resulted." *Med-com, Inc. v. C. Arthur Weaver Co.,* 232 Va. 80, 87, 348 S.E.2d 243, 248 (1986). "Proof with mathematical precision is not required, but there must be at least sufficient evidence to permit an intelligent and probable estimate of the amount of damage." *Hailes v. Gonzales,* 207 Va. 612, 614, 151 S.E.2d 388, 390 (1966) (citing *Gwaltney v. Reed,* 196 Va. 505, 507–08, 84 S.E.2d 501, 501–02 (1954)). "Damages which cannot be established with reasonable certainty are speculative or conjectural and may not be recovered." *Miller v. Johnson,* 231 Va. 177, 187, 343 S.E.2d 301, 307 (1986).

It is undisputed that Musick was admitted into the Holston Valley Hospital on June 7, 1984 for what was later diagnosed as a cerebral contusion, a subdural fibroma, and a fractured right scapula. Similarly, it is undisputed that, on June 11, 1984, the treating physicians proceeded with Burr holes to relieve the accumulation of subdural fluid. Also, a subsequent subdural tap was performed.

■ This court also finds that, as a result of the accident, Musick suffered total, permanent deafness in his right ear. As for the left ear, there is conflicting evidence concerning the amount of hearing loss. The court finds that, based on Dr. Crockett's diagnosis, there has been a moderate loss of hearing in the left ear. However, Musick was able to hear counsel's questions at trial. The court also notes that Musick did not wear a hearing aid and, to that extent, he has not minimized his damages.

■ The court finds that Musick has failed to satisfy his burden of proving that his tooth loss was related to the accident. Dr. Wilson states only that, historically, the tooth loss was related to the accident. Dr. Quillen's letter does not address the cause of Musick's discomfort. Therefore, causation is speculative and no damages may be recovered for the tooth loss.

■ The court finds that Musick's loss of smell is permanent and causally related to the accident as stated in Dr. Wilson's report. (Plaintiff's Exhibit # 6(a)). As for the loss of taste, there is conflicting evidence. The court finds Dr. Wilson's statement that "taste is intact" persuasive. (Plaintiff's Exhibit # 6(b)). The court also find that the loss of smell has not created problems with loss of appetite or interest in food. At trial, Musick appeared to be healthy and well nourished. Mrs. Musick's testified that her husband eats six to eight times a day. The evidence shows that, aside from the thirty-six pounds lost while hospitalized, Musick has maintained a weight of 150 pounds.

The court finds that Musick suffers from numbness in his lower extremities and from a loss of power in his right grip as a result of the accident.

The court also finds that Musick suffers from headaches as a result of the accident and accepts his testimony that they are throbbing.

■ The court also finds that Musick suffers from permanent cognitive impairment as a result of the accident. This has resulted in impairment of new learning ability and memory retention. (Plaintiff's Exhibit # 4(b)).

■ The court finds that Musick has not met his burden of proving that his vision has been impaired as a result of the accident. Dr. McKnight noted that "Vision is good without glasses." The fact that Musick needs glasses to read is not unusual in a man of his age and has not been shown to be causally related to the accident.

■ As for the change in personality attested to by the plaintiff's wife, it is clear

from the record that Musick is not aware of his change in personality. At trial, he made no mention of any such change. It was only after he had exited the courtroom that his wife took the stand and raised these problems. Similarly, in the medical reports, it was the plaintiff's wife that raised these concerns.

To the extent that Musick is unaware of his loss, this case is similar to *Flannery*. In *Flannery*, plaintiff became permanently comatose as a result of extensive brain damage suffered in an automobile accident. 718 F.2d at 110. The Fourth Circuit certified the following question to the state court, "[I]s a plaintiff in a personal injury action, who has been rendered permanently semi-comatose by his injuries and is therefore unable to sense his injuries, entitled to recover for the impairment of his capacities to enjoy life." The state court found that, as a matter of state law, damages for the loss of enjoyment of life were assessable even though this particular plaintiff was unaware of his loss. *Flannery v. United States*, 171 W.Va. 27, 297 S.E.2d 433, 438–39 (1982).

The Fourth Circuit found that, even though these damages were allowed under state law, they were punitive under the FTCA. The court stated:

> It is perfectly clear, however, that an award of $1,300,000 for the loss of enjoyment of life cannot provide him with any consolation or ease any burden resting upon him.... He cannot use the $1,300,-000. He cannot spend it upon necessities or pleasures. He cannot experience the pleasure of giving it away....
>
> Since the award of $1,300,000 can provide Flannery with no direct benefit, the award is punitive and not allowable un-der the FTCA.

718 F.2d at 111.

The plaintiff argues that, unlike in *Flannery*, Musick could spend the money and experience the pleasure of giving it away. This is true. Since Musick is not comatose, an award for his change in personality could provide him with direct benefit and is therefore allowable under *Flannery*.

*Burke v. United States*, 605 F.Supp. 981, 992 (D.Md.1985).

■ The court finds that Musick suffers from a psychotic illness as a result of his organic brain syndrome which causes him to have severe marital paranoia and severe personal neglect. (Plaintiff's Exhibit # 4(a)). However, the court notes that there can be no recovery for loss of consortium under Virginia law. *Carey v. Foster*, 345 F.2d 772, 776 (4th Cir.1965). The recovery is limited to compensating Musick for his injuries and cannot serve to compensate his wife for any loss she may have suffered.

■ Based on the above, the court finds the United States is liable in the amount of $120,000 for bodily injuries.

### 2. *Pain and Suffering*

■ Under Virginia law, the plaintiff may recover for past and future pain and mental anguish. *Bell v. Kirby*, 226 Va. 641, 645–46, 311 S.E.2d 799, 802 (1984). "It has been universally recognized ... that an award for the future effects of an injury, such as pain and suffering and medical expenses, is appropriate when there is evidence to support it." *Hailes*, 207 Va. at 614, 151 S.E.2d at 390. Mental anguish and physical pain may be proved directly or it may be inferred "from the circumstances of the injury, including the violence with which it was inflicted." *Wallen v. Allen*, 231 Va. 289, 294, 343 S.E.2d 73, 76 (1986).

■ The term "mental anguish" also encompasses "plaintiff's cognitive anguish at the loss of pleasures he formerly enjoyed." *Bulala*, 239 Va. at 232, 389 S.E.2d at 677. Thus, although Virginia has not recognized "loss of enjoyment of life" as being separately compensable, any such loss is to be considered as mental anguish. *See id.*

■ Regarding past physical pain and mental anguish, Musick suffered a violent injury resulting in a cerebral contusion, a subdural fibroma, and a fractured right scapula. Treatment for this included Burr holes and a subdural tap. Musick specifi-

cally testified that he does not remember the events of June 7, 1984, nor does he remember being hospitalized. However, physical pain and mental anguish can be inferred from violence with which the injuries were inflicted. *Wallen*, 231 Va. at 294, 343 S.E.2d at 76.

■ As for future pain and mental anguish, the court finds that Musick will suffer from: 1) "roaring" and "clicking" sounds in his ears; 2) numbness in his lower extremities and loss of power in his right grip; and 3) headaches. As for "loss of enjoyment of life" as included under mental anguish, Musick will not hear as well as he could before the accident; miss his sense of smell; and not enjoy the pleasures that working outside brought him.

Based on the above, the court finds the United States is liable in the amount of $100,000 for past and future pain and mental anguish.

### 3. *Disfigurement and Deformity*

There was no evidence of deformity or any resulting humiliation or embarrassment. Therefore, no award can be had for this type of damage. *Armstead v. James*, 220 Va. 171, 174, 257 S.E.2d 767, 769 (1979); *see also Swersky v. McPeek*, 214 Va. 253, 254–55, 199 S.E.2d 507, 508 (1973).

### 4. *Inconvenience*

■ A plaintiff may recover for any inconvenience and discomfort caused in the past and any which will probably be caused in the future. *Todt v. Shaw*, 223 Va. 123, 128, 286 S.E.2d 211, 214 (1982). However, aside from the evidence of pain and mental anguish above, there is no evidence of further inconvenience. Therefore, any award in addition to that awarded for pain and suffering would be duplicative and is not allowable under *Flannery*. 718 F.2d at 112.

### 5. *Medical Expenses*

"Plaintiff is clearly entitled to recover for past and future medical expenses under the FTCA, provided these items are proved with reasonable certainty." *Corrigan v. United States*, 609 F.Supp. 720, 732 (E.D.Va.1985), *rev'd on other grounds*, 815 F.2d 954, *cert. denied*, 484 U.S. 926, 108 S.Ct. 290, 98 L.Ed.2d 250 (1987).

The parties stipulated that Musick's past medical expenses were $21,862.70. Therefore, the United States is liable for medical expenses in the amount of $21,862.70. There was no evidence of future medical expenses, so none will be awarded. *Hailes*, 207 Va. at 614–15, 151 S.E.2d at 390.

### 6. & 7. *Loss of Earnings*

Any past earnings lost and any future lost earnings will be considered together because Musick has not worked since the accident. "An award of lost earnings is generally made so that the injured party can pay for those necessities and amenities which he would have provided for himself out of his earned income had he not been injured. Such an award is usually proper under Virginia law." *Corrigan*, 609 F.Supp. at 732–33; *see also Clark v. Chapman*, 238 Va. 655, 662, 385 S.E.2d 885, 889 (1989).

Musick has not worked since the accident. The medical evidence indicates that Musick will never again be suitable for employment. For the two years prior to the accident, Musick's net profits from his business were $7,546.00 and $1,264, giving an average of $4,405.00. He was fifty-seven at the time of the accident and planned to retire at age sixty-two, giving him five more years of income. After retiring, Musick planned to collect Social Security, and he is currently doing so.

The court therefore finds that Musick's lost earning are $4,405.00/year multiplied by five years equaling $22,025.

■ "It has been repeatedly held that federal income taxes must be deducted in computing lost future earnings, notwithstanding the fact that such deductions are not permissible under state law." *Flannery*, 718 F.2d at 111. However, the burden is on the government to raise the issue and to prove the extent of the reduction. *Barnes v. United States*, 685 F.2d 66, 69 (3d Cir.1982); *Javanovich v. United States*, 813 F.2d 1035, 1037 (9th Cir.1987). The government has not raised the issue, therefore it will not be considered.

454

The government also raised the issue that Musick received Social Security benefits during the five years for which lost earnings have been calculated. However, the government is not entitled to a reduction for these benefits because these come from a collateral source. *See United States v. Price*, 288 F.2d 448, 451 (4th Cir.1961); *Carroll v. United States*, 625 F.Supp. 1, 8 (D.Md.1982); *Manko v. United States*, 830 F.2d 831, 836–37 (8th Cir.1987).

### 8. *Property*

The defendant has not proved any property damage, therefore, no damages can be awarded.

### CONCLUSION

For the foregoing reasons the court finds the United States liable in the amount of: 1) $120,000 for bodily injuries; 2) $100,000 for past and future pain and mental anguish; 3) $0.00 for disfigurement and deformity; 4) $0.00 for inconvenience; 5) $21,862.70 for past and future medical bills; 6) $22,025.00 for lost earnings; and 7) $0.00 for property damage. The court will enter an appropriate order.