Helen C. BOYD; Roger E. Boyd; Veronica Lynn Boyd; by her parents and next friends, Helen Boyd & Roger E. Boyd, Plaintiffs–Appellees,

v.

R.A. BULALA, M.D., Defendant–Appellant,

Association of Trial Lawyers of America; Virginia Trial Lawyers Association; Distressed Parents Together; Consumer Federation of America Medical Society of Virginia, Amici Curiae.

Helen C. BOYD; Roger E. Boyd; Veronica Lynn Boyd, by her parents and next friends, Helen Boyd & Roger E. Boyd, Plaintiffs–Appellees,

v.

COMMONWEALTH OF VIRGINIA; R.A. Bulala, M.D., Defendants–Appellants.

Nos. 88–2055L, 88–2056.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1989.

Decided June 12, 1989.

A.E. Dick Howard, Phillip C. Stone (Ronald D. Hodges, Wharton, Aldhizer & Weaver, Harrisonburg, Va., Mary Sue Terry, Atty. Gen., Stuart, Va., Gregory E. Lucyk, Asst. Atty. Gen., on brief), for defendants-appellants.

Rosemarie Annunziata (Dickstein, Shapiro & Morin, Washington, D.C., William O.P. Snead, III, Fairfax, Va., J. Randolph Parker, Tucker, Parker & Beskin, Charlottesville, Va., on brief), for plaintiffs-appellees.

(Bill Wagner, Jeffrey R. White, Fred D. Smith, Jr., Minor & Smith, Richmond, Va., on brief), for amici curiae, The Ass'n of Trial Lawyers of America, Va. Trial Lawyers Ass'n, Consumer Federation of America, Distressed Parents Together.

(Allen C. Goolsby, III, Patricia M. Schwarzschild, Robert Acosta–Lewis, Timothy A. Hartin, Hunton & Williams, Richmond, Va., on brief), for amicus curiae, the Medical Soc. of Va.

(J. Joseph Curran, Jr., Atty. Gen., Judson P. Garrett, Jr., Deputy Atty. Gen., Baltimore, Md., Robert A. Zarnoch, Annapolis, Md., Kathryn M. Rowe, Asst. Attys. Gen., on brief), for amicus curiae, State of Md.

(John R. Bolton, Asst. Atty. Gen., Robert S. Greenspan, Silver Spring, Md., Scott R. McIntosh, Appellate Staff, Washington, D.C., Civil Div., Dept. of Justice, on brief), for amicus curiae, U.S. in support of defendants-appellants.

Before WINTER, HALL, and PHILLIPS, Circuit Judges.

HARRISON L. WINTER, Circuit Judge:

This medical malpractice action against Dr. R.A. Bulala arose out of his mismanagement of the birth of Veronica Boyd, now deceased. Veronica obtained a verdict for $1,850,000 in compensatory damages and a verdict for $1,000,000 in punitive damages. Her mother, Helen Boyd, obtained a verdict for $1,575,000 in compensatory damages and a separate verdict for $1,000,000 in punitive damages. Her father, Roger Boyd, obtained a verdict for $1,175,000 in compensatory damages and her mother and father jointly obtained a verdict for $1,700,000 for Veronica's medical expenses until she reached the age of 18.[1] The doctor and the Commonwealth of Virginia, which intervened in the proceedings, appeal.

One of the principal issues in these appeals is whether plaintiffs' recovery, in the aggregate or in part, should be limited to $750,000, the Virginia cap on recovery in an action for medical malpractice effective when the malpractice in this case occurred. See Va.Code Ann. § 8.01–581.15 (1984).[2]

---

1. Pursuant to Va.Code Ann. § 8.01–35.1 (Supp. 1988), the district court reduced the verdicts for compensatory damages $650,000 in the aggregate by reason of plaintiffs' settlement of their malpractice claims against the hospital in which Veronica was born. Boyd v. Bulala, 678 F.Supp. 612 (W.D.Va.1988). That action had been instituted in a state court against the hospital and the doctor. After settlement with the hospital, the doctor was nonsuited and the instant case tried in the district court.

2. The text of the present statute follows:
In any verdict returned against a health care provider in an action for malpractice where the act or acts of malpractice occurred on or after October 1, 1983 ... the total amount recoverable for any injury to, or death of, a patient shall not exceed one million dollars.

The district court held that the cap unconstitutionally denied plaintiffs their right to a jury trial as guaranteed by the Federal and Virginia Constitutions, and therefore declined to apply it. The doctor and the Commonwealth contend that the cap is constitutionally valid, but plaintiffs assert that it is unconstitutional on the ground assigned by the district court and also for other reasons. Subsequent to oral argument in this case, the Supreme Court of Virginia upheld the constitutionality of § 8.01–581.15 under both the Virginia and Federal Constitutions. *See Etheridge v. Medical Center Hospitals, Inc.*, 237 Va. 87, 376 S.E.2d 525 (1989). In light of this development, we view as settled the constitutionality of the cap under the Virginia Constitution. Moreover, we agree with the Supreme Court of Virginia that the cap offends no provision of the Federal Constitution.

There are a number of other issues which require decision as well. Some of them turn on Virginia state law where we think the law is settled and we are competent to apply it. Others turn on state law where there is no definitive adjudication by the Supreme Court of Virginia and where the decisions of Virginia nisi prius courts are in conflict. We therefore decide as much as we are able to decide authoritatively and certify to the Supreme Court of Virginia those unsettled questions of state law which must necessarily be resolved in order to formulate a final decision in these appeals.

Specifically, we hold that according to settled state law Dr. Bulala may, under the evidence in this case, be vicariously liable for the negligence of the hospital's nurses and that the jury was properly instructed in this regard. We also hold that Veronica's father may recover for the infliction of emotional distress even though he suffered no actual physical injury, and that Virginia law allows the recovery of punitive damages in this case.

With regard to issues where there is not settled state law, we certify the questions of whether in applying the cap where there are two or more plaintiffs entitled to recover as a result of medical malpractice, the cap applies individually to each plaintiff or overall to two or more plaintiffs having causes of action arising from the same act or acts of malpractice, and of how, if the cap does apply to all or any combination of plaintiffs' claims, it is to be apportioned among them. We also certify the related questions of whether the cap applies to an action for infliction of emotional distress and whether the cap applies to punitive damages as well as compensatory damages. In regard to the recovery by Veronica, we certify the questions of whether Veronica is entitled to recover for loss of enjoyment of life as an element of compensatory damages and whether she is entitled to recover for lost earning capacity as an element of compensatory damages when the evidence shows that had she survived, she would never have developed beyond the mental age of one year. Finally, we certify the question of the effect under Virginia law of Veronica's death after verdict, but before judgment on the verdict, on her recovery for compensatory damages and on her parents' recovery for future medical expenses when her death established beyond peradventure of doubt that those expenses would not be incurred. Specifically, did the district court correctly enter judgment on these verdicts pursuant to Va. Code Ann. § 8.01–21 (1984) or should Veronica's suit have been converted to a wrongful death action pursuant to Va.Code Ann. §§ 8.01–25 and 8.01–56 (1984)?

I.

We begin with a brief overview of the evidence in this case, noting that we will discuss additional relevant facts in conjunction with our consideration of the various contentions to which they relate.

The facts are not materially in dispute. Dr. Bulala, a board-eligible obstetrician and gynecologist, undertook the care and treatment of Helen Boyd on the occasion of her second pregnancy. At approximately 4:00 a.m. on the morning of January 31, 1982,

On January 31, 1982, the date of Veronica's birth, the limit of recovery was $750,000.

Dr. Bulala received a telephone call from a nurse at Clinch Valley Community Hospital notifying him that Mrs. Boyd had been admitted in active labor. Although Mrs. Boyd's labor was almost three weeks premature, Dr. Bulala did not proceed to the hospital to conduct an independent evaluation of her condition or to supervise the nursing staff personally. Instead, he elected to remain at home, some twenty minutes away, and delegate the monitoring of Mrs. Boyd's labor to the night nursing staff. Indeed, Dr. Bulala had a routine order that, unless there were complications, he was not to be summoned to the hospital for an off-hours delivery until "crowning," the stage of labor at which the baby's head reaches the vaginal opening. In accordance with his order, the nurses did not notify Dr. Bulala when Mrs. Boyd entered the second stage of labor at 7:00 a.m.

At some point following Mrs. Boyd's admission to the hospital, probably within the hour or two before birth, the fetus suffered acute distress. Because they had failed to monitor Mrs. Boyd properly, however, the nurses did not detect the emergency until 7:45 a.m., when they discovered that the fetal heart rate was well below normal. Some fifteen minutes later, a nurse called Dr. Bulala, still at home, and informed him for the first time of the complications surrounding Mrs. Boyd's labor. Shortly thereafter, the nurses rushed Mrs. Boyd to the delivery room where she gave birth to her severely asphyxiated baby, Veronica, before Dr. Bulala could arrive.

Because of a prenatal oxygen deficiency, Veronica suffered from a number of grave birth defects, including seizures, cerebral palsy, and mental retardation, which in turn led to feeding difficulties, recurrent pneumonia, and a danger of bone deformation. "Uncontroverted testimony at trial established that Veronica would never walk, that she could possibly develop mentally to the level of a one-year-old child, and that she would require institutional care for the rest of her life. Similarly uncontroverted was the expert testimony on the infant's life expectancy, costs of the necessary intensive institutional care, and on the other costs associated with maintaining and caring for the infant." *Boyd v. Bulala,* 672 F.Supp. 915, 917–18 (W.D.Va.1987). About a month-and-a-half after trial, before the district court had ruled on any post-trial motions, Veronica Boyd died.

## II.

### State Constitutional Issues

■ We address first plaintiffs' contentions regarding the validity of § 8.01–581.15 under the Virginia Constitution. Plaintiffs assert that the cap denies the right of trial by jury and violates the separation of powers, anti-discrimination, and special legislation clauses of the Virginia Constitution. *See* Va. Const. art. I § 11; art. III § 1; art. IV § 14. The recent decision of the Supreme Court of Virginia in *Etheridge v. Medical Center Hospitals,* 237 Va. 87, 376 S.E.2d 525 (1989), announced after argument of the instant case, upholds the constitutionality of the cap on all these grounds. With respect to the Virginia Constitution, it is absolutely binding on us. Accordingly, we reject plaintiffs' contentions.

## III.

### Federal Constitutional Issues

We next address the constitutionality of § 8.01–581.15 under the Federal Constitution. The district court held that the cap denies the right of trial by jury guaranteed by the seventh amendment.[3] Plaintiffs argue that the cap is unconstitutional for this reason and also because it violates the separation of powers and denies due process and equal protection under the fourteenth amendment.

In *Etheridge,* the Supreme Court of Virginia discussed the validity of the cap under the Federal Constitution and rejected some of the same challenges raised here. While *Etheridge* is of course not binding

---

**3.** The district court refused to reconsider this holding in *Reuwer v. Hunter,* 684 F.Supp. 1340, 1343–44 (W.D.Va.1988).

upon us in these matters of federal law, we find its reasoning persuasive and we follow it in this case, adding only some additional comments.

## A. *Right of Trial by Jury*

■ We disagree with the district court's conclusion that § 8.01–581.15 violates the right of trial by jury under the seventh amendment. True, it is the role of the jury as factfinder to determine the extent of a plaintiff's injuries. As the *Etheridge* court pointed out, however, it is not the role of the jury to determine the legal consequences of its factual findings. *See* 376 S.E.2d at 529.[4] That is a matter for the legislature, and here, the Virginia legislature has decided that as matter of law damages in excess of $750,000 are not relevant. In so doing it has not violated the seventh amendment. To paraphrase *Etheridge*, once the jury has made its findings of fact with respect to damages, it has fulfilled its constitutional function; it may not also mandate compensation as a matter of law.[5]

We reject the district court's holding for another reason as well. It is by now axiomatic that the " 'Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' " *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978), *quoting Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929). Indeed, the district court conceded that a legislature's outright abolition of a cause of action would not violate the seventh amendment. *Boyd v. Bulala,* 647 F.Supp. 781, 789 (W.D.Va.1986). *See also Mountain Timber Co. v. Washington,* 243 U.S. 219, 235, 37 S.Ct. 260, 263, 61 L.Ed. 685 (1917); *Dimond v. District of Columbia,* 792 F.2d 179, 190 n. 7 (D.C.Cir.1986). If a legislature may completely abolish a

cause of action without violating the right of trial by jury, we think it permissibly may limit damages recoverable for a cause of action as well. *Cf. Dimond,* 792 F.2d at 190 n. 7 (minimum medical expense threshold imposed by District of Columbia's no-fault law is a *pro tanto* abolition of a cause of action that does not violate the seventh amendment).

## B. *Separation of Powers*

■ We also reject the contention that § 8.01–581.15 violates federal separation of powers principles. It is settled law that "the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States." *Whalen v. United States,* 445 U.S. 684, 689 n. 4, 100 S.Ct. 1432, 1436 n. 4, 63 L.Ed.2d 715 (1980), *citing Dreyer v. Illinois,* 187 U.S. 71, 84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902). *See also Tarrant v. Ponte,* 751 F.2d 459, 464 n. 7 (1 Cir.1985); *Attwell v. Nichols,* 608 F.2d 228, 230 (5 Cir.1979), *cert. denied,* 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980). The Virginia cap cannot violate federal separation of powers principles for the simple reason that those principles are inapplicable.

## C. *Due Process and Equal Protection*

■ We cannot accept plaintiffs' assertion that § 8.01–581.15 violates the fourteenth amendment's guarantees of due process and equal protection. As the *Etheridge* court pointed out, *see* 376 S.E.2d at 531, 534 a limitation on a common law measure of recovery does not violate a fundamental right or create a suspect classification. Section 8.01–581.15 is "a classic example of an economic regulation—a legislative effort to structure and accommodate 'the burdens and benefits of economic life.' " *Duke Power,* 438 U.S. at 83, 98 S.Ct. at 2635, *quoting Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). As

---

**4.** The *Etheridge* court was addressing the right of trial by jury under the Virginia Constitution, *see* 376 S.E.2d at 528, but we think its reasoning applies here as well.

**5.** We note in passing that the Supreme Court has recently suggested that the right to a jury trial may not even extend to the "remedy phrase of a civil trial." *Tull v. United States,* 481 U.S. 412, 426 n. 9, 107 S.Ct. 1831, 1840 n. 9, 95 L.Ed.2d 365 (1987).

such, it is subject only to limited "rational basis" review: plaintiffs have the burden of demonstrating that in enacting the cap the Virginia " 'legislature has acted in an arbitrary and irrational way.' " *Id. See also Lucas v. United States,* 807 F.2d 414, 421–22 (5 Cir.1986); *Hoffman v. United States,* 767 F.2d 1431, 1435–37 (9 Cir.1985); *Continental Ins. Co. v. Illinois Dept. of Transp.,* 709 F.2d 471, 475 (7 Cir.1983) (all applying rational basis test to state statutory limitations on liability); *cf. Gronne v. Abrams,* 793 F.2d 74, 77–78 (2 Cir.1986); *DiAntonio v. Northampton–Accomack Mem. Hosp.,* 628 F.2d 287, 291 (4 Cir.1980) (both upholding provisions of medical malpractice legislation under rational basis equal protection review).

In *Etheridge,* the Supreme Court of Virginia discussed in some detail the reasoning behind the Virginia legislature's decision to impose a cap on liability for medical malpractice. *See* 376 S.E.2d at 524. We see no reason to revisit the legislative history here. Suffice it to say that we agree with the conclusion of the Supreme Court of Virginia that the cap on liability bears a reasonable relation to a valid legislative purpose—the maintenance of adequate health care services in the Commonwealth of Virginia. We therefore agree that § 8.01–581.15 does not violate the fourteenth amendment's guarantees of due process or equal protection.[6]

## IV.

### State Law Issues

We now turn to those questions on which there is settled state law that it is our duty to apply: (A) whether there was sufficient evidence to support the district court's jury instruction on agency and to submit that issue to the jury; (B) whether Roger Boyd was entitled to recover for infliction of emotional distress; and (C) whether plaintiffs were entitled to recover punitive damages.[7]

### A. Jury Instruction on Agency

■ The district court instructed the jury that if it found that the delivery room nurses were the agents of Dr. Bulala, then Dr. Bulala would be liable for their negligence while they were acting within the scope of their employment. Dr. Bulala asserts that there was insufficient evidence of an agency relationship to support this instruction and to submit the case to the jury on this alternative theory. The issue is important because the jury was permitted to return a verdict against Dr. Bulala on the theory of either his actual negligence or his vicarious negligence.

We disagree that the evidence did not warrant submission of this issue. Under Virginia law, the one essential factor to the existence of an agency relationship is the principal's power of control, whether actually exercised or merely potential. *Virginia Employment Comm'n v. A.I.M. Corp.,* 225 Va. 338, 345–49, 302 S.E.2d 534, 539–40 (1983); *Naccash v. Burger,* 223 Va. 406, 417, 290 S.E.2d 825, 832 (1982). Here, Dr. Bulala told the nurse who telephoned him when Mrs. Boyd arrived at the hospital to follow his "routine orders" and to call him if there were any problems. One of Dr. Bulala's routine orders, of course, was that he should not be notified until crowning, and the record indicates that the nurses

---

**6.** Plaintiffs also argue that § 8.01–581.15 implicates the due process clause because it abrogates a common law remedy without providing a reasonably just substitute. We have already held, however, that plaintiffs' argument is based on an unsound premise. *Carr v. United States,* 422 F.2d 1007, 1010–11 (4 Cir.1970). Nothing in *Duke Power,* relied on by plaintiffs, persuades us that we should reconsider this holding. In *Duke Power,* the Supreme Court declined an opportunity to establish the *quid pro quo* requirement for which plaintiffs contend here. 438 U.S. at 88 & n. 32, 98 S.Ct. at 2638 & n. 32. *See also Fein v. Permanente Medical Group,* 474

U.S. 892, 894–95, 106 S.Ct. 214, 215–16, 88 L.Ed. 2d 215 (1985) (mem.) (White, J., dissenting from dismissal of appeal) (discussing *Duke Power*).

**7.** Dr. Bulala also asserts that, even if Virginia's statutory cap on damages were constitutionally infirm, the damage awards in this case would be excessive under settled Virginia common law. In light of our conclusion that § 8.01–581.15 offends neither the Federal nor the Virginia Constitution, we find it unnecessary to reach this issue.

followed this order in attending Mrs. Boyd even though it contravened hospital policy and good medical practice. In sum, we think that the evidence of Dr. Bulala's power of control was sufficient to justify the district court's instruction on agency and its submission of that issue to the jury.

### B. Roger Boyd's Recovery for Emotional Distress

◼ Dr. Bulala argues that the district court should have set aside the jury's award of compensatory damages to Roger Boyd for emotional distress. He argues that as a mere "bystander" who only witnessed his daughter's suffering, Roger Boyd cannot recover for emotional distress under Virginia law. Again, we disagree.

It is true that, as a general matter, Virginia law does not allow a plaintiff to recover damages for emotional distress unless they "result directly from tortiously caused physical injury." *Naccash*, 223 Va. at 414, 290 S.E.2d at 830. In *Naccash*, however, the Supreme Court of Virginia carved out an exception to this rule in a case in which parents sought recovery against a physician for emotional distress upon the birth of a defective child. *Id.* at 416, 290 S.E.2d at 831. In such a situation, the Court reasoned, it was "wholly unrealistic" to view the parents as "mere witnesses to the consequences" of the physician's tortious conduct, and there was little reason to fear that their distress was feigned or that their claim was fraudulent. *Id.*

We think that Roger Boyd's claim for emotional distress fits well within the bounds of the *Naccash* exception and that the district court did not err in refusing to disturb the jury's verdict in his behalf. Roger Boyd had engaged Dr. Bulala to be his wife's attending physician. Roger Boyd was present at the birth. He did see his daughter immediately after delivery when she was in a severely distressed condition. Finally, Roger Boyd had planned to participate and assist in the delivery of his child. He was denied this opportunity by Dr. Bulala's indifference.

### C. Punitive Damages

◼ We do not agree with Dr. Bulala that Virginia law prohibits recovery of punitive damages in this case. It is settled in Virginia that willful and wanton negligence "will support an award of punitive damages in a personal injury case." *Booth v. Robertson*, 236 Va. 269, 272, 374 S.E.2d 1, 3 (1988). *See also Wallen v. Allen*, 231 Va. 289, 296, 343 S.E.2d 73, 78 (1986); *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 686, 152 S.E.2d 271, 277 (1967); *cf. El-Meswari v. Washington Gas Light Co.*, 785 F.2d 483, 489 (4 Cir.1986) (discussing requirements for recovery of punitive damages under Virginia wrongful death statute). The Supreme Court of Virginia has defined willful and wanton negligence as " 'acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably [will] cause injury to another.' " *Philip Morris Inc. v. Emerson*, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988), *quoting Griffin v. Shively*, 227 Va. 317, 321–22, 315 S.E.2d 210, 213 (1984).

In this case, there is abundant evidence that Dr. Bulala's negligence was "so willful or wanton as to evince a conscious disregard" of plaintiffs' rights. *Booth*, 236 Va. at 272, 374 S.E.2d at 3. Dr. Bulala himself admitted that it was "part of [his] practice" to lower his standard of care for his patients at night because he needed his rest. He acknowledged that ascertaining a patient's condition over the telephone was a "risky proposition" "fraught with peril," and that he did not obtain from the nurses on duty critical information necessary for the assessment of Mrs. Boyd's labor. He knew that his routine order not to be called until crowning posed risks to the physical and emotional health of the mother and the physical health of the child. Indeed, because of the rapidity with which delivery may occur after crowning, one expert at trial compared Dr. Bulala's practice to "Russian roulette." Given all this, we think that the district court was correct in refusing to set aside the jury's awards of

punitive damages.[8]

## V.

### Certified Questions

■ We now come to those questions of state law on which we must respectfully turn to the Supreme Court of Virginia for an authoritative ruling. An answer to each, we think, is necessary in order fully to decide this case.

Rule 5:42 of the Rules of the Supreme Court of Virginia gives that Court the discretion to answer questions of Virginia law certified to it by us, provided that those questions are determinative in our proceedings and there appear to be no controlling Virginia precedents on point. In our view, this case presents several such questions, which may be divided into two groups.

The first group of questions concerns the construction of § 8.01–581.15. The Supreme Court of Virginia's recent decision in *Etheridge v. Medical Center Hospitals,* 237 Va. 87, 376 S.E.2d 525, 534 (1989), makes clear that the cap places a limit on total recovery against all defendants in an action. That Court has not ruled, however, on whether the cap applies individually to the recovery of each plaintiff or collectively to the total recovery of all plaintiffs in an action arising out of a common nucleus of facts.[9] Similarly, there has been no indication of how, if the cap does apply to the aggregate of plaintiffs' claims, it is to be apportioned among them. Also unsettled are the questions of whether the cap applies to damages for the related tort of infliction of emotional distress, or to punitive damages.

The second group contains three questions that do not relate to the statute. The district court instructed the jury that it could award Veronica Boyd damages for loss of enjoyment of life. Virginia law has not expressly recognized loss of enjoyment of life as a compensable injury, however, and counsel have not cited, nor are we aware of, any Virginia precedents from which we may confidently predict whether there may be a monetary recovery for such an injury.

The district court also instructed the jury that it could award damages to Veronica Boyd for her lost future income and admitted a statistical projection of her lost earning capacity that took into account a number of factors, including the median income of women in metropolitan areas of Virginia, the probable effects of inflation, and the rate of non-participation of women in the work force. While it seems clear that in Virginia an infant plaintiff may recover damages for the impairment of earning capacity in a personal injury suit, *see Moses v. Akers,* 203 Va. 130, ——, 122 S.E.2d 864, 865–66 (1961); *Watson v. Daniel,* 165 Va. 564, 183 S.E. 183, 187 (1936); 5C *Michie's Jurisprudence of Virginia & West Virginia,* Damages § 28, at 73 (1983), we are quite uncertain whether in the circumstances of this case the statistical evidence relied on by Veronica would be considered too speculative to support an award. *See Cassady v. Martin,* 220 Va. 1093, 266 S.E.2d 104 (1980). Our decision in *Mullins v. Seals,* 562 F.2d 326, 328–29 (4 Cir.1977), may well be read to hold that the statistical projection was inadmissible, but of course our decision in a diversity case on an issue of state law is not binding authority on state courts.

Finally, Dr. Bulala argues that upon Veronica's death after verdict, but before judgment, the district court should have converted the action into one for wrongful death under Va.Code Ann. §§ 8.01–25 and 8.01–56 (1984).[10] The effect of such a con-

---

**8.** We do not address Dr. Bulala's contentions concerning the constitutionality of the punitive damage awards. These contentions were not raised in the district court. The issue is presently under review by the Supreme Court in *Kelco Disposal, Inc. v. Browning–Ferris Indus.,* 845 F.2d 404 (2 Cir.1988), *cert. granted,* —— U.S. ——, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988).

**9.** In their briefs and at oral argument, counsel informed us that there is not unanimity among lower Virginia courts on this question.

**10.** Section 8.01–25 provides:
Every cause of action ... shall survive ... the death of the person in whose favor the cause of action existed.... Provided ... that if the cause of action asserted by the decedent in his lifetime was for a personal injury and such

version could be to limit severely any recovery for Veronica's medical expenses and that of her parents, probably necessitating a new trial in both such causes of action. Plaintiffs, however, contend that the district court correctly entered judgment under Va.Code Ann. § 8.01–21 (1984), which provides that "[w]hen a party dies ... after verdict, judgment may be entered as if it had not occurred." The Supreme Court of Virginia has never resolved the seeming contradictions among these statutes. We are referred to no precedents, nor have we found any, to resolve the tension among them.

 Dr. Bulala also contends that the district court erred in refusing to grant his motion for relief from judgment under Fed. R.Civ.P. 60(b)(6). Although we have a duty to decide all matters except unsettled and unpredictable questions of Virginia law before requesting guidance from the Supreme Court of Virginia, we do not think that the Rule 60(b)(6) issue is justiciable at this point in the litigation. Before the question of whether Dr. Bulala should be granted relief from judgment is reached, the question of whether judgment should have been entered at all must be decided. At this stage of the appeal, we have no answer to this prior question, and until there is authoritative Virginia precedent holding that judgment should have been entered on Veronica's personal injury claim, we think it premature to decide whether Dr. Bulala should be granted relief from that judgment. It may well be that Virginia law requires that this action be converted into one for wrongful death, and in that event, a resolution of the Rule 60(b)(6) question would be unnecessary and inappropriate, a mere advisory opinion. We therefore respectfully reserve decision of the Rule 60(b)(6) question until it appears that it is a real issue in this case.

To summarize, we respectfully certify the following questions to the Supreme Court of Virginia:

1. Where there are two or more plaintiffs entitled to recover damages arising from the same act or acts of medical malpractice, does § 8.01–581.15 apply individually to each plaintiff or overall to two or more such plaintiffs? If the statute does apply to all or any combination of plaintiffs' claims, how is it to be apportioned among them?

2. Does § 8.01–581.15 apply to damages for the infliction of emotional distress arising from some act or acts of medical malpractice?

3. Does § 8.01–581.15 apply to an award of punitive damages for an act or acts of medical malpractice?

4. Does Virginia law allow recovery for the loss of enjoyment of life when death results from an act or acts of medical malpractice?

5. Does Virginia law allow Veronica Boyd to recover damages for her lost earning capacity based upon the evidence presented in this case?

6. What is the effect, under Va.Code Ann. §§ 8.01–21, 8.01–25, and 8.01–56, of Veronica Boyd's death after verdict but before judgment in this case?

We shall ultimately direct the Clerk to prepare a certification order in accordance with Rule 5:42 and to forward it to the Supreme Court of Virginia along with this opinion and a copy of the record in this case. First, however, the opinion shall be released to counsel who shall have the right within fifteen days to suggest changes in the statement of facts, the questions of law and the authorities referred to, all to the end that there may be a full and complete certification to the Supreme Court of Virginia of the questions proposed. The

decedent dies as a result of the injury complained of with a timely action for damages arising from such injury pending, the action shall be terminated in accordance with the provisions of § 8.01–56.
Section 8.01–56 provides:
[W]hen a person who has brought an action for personal injury dies pending the action,

such action may be revived in the name of his personal representative. If death resulted from the injury for which the action was originally brought, a motion for judgment and other pleadings shall be amended so as to conform to an action under [the wrongful death statute], and the case proceeded with as if the action had been brought [thereunder].

Court reserves the right to modify the opinion in the light of the comments received. Costs shall be equally divided between the parties. *See* Rule 5:42(g).

AFFIRMED IN PART, REVERSED IN PART, AND CERTIFIED TO THE SUPREME COURT OF VIRGINIA.