David HIPP, Harry W. McKown, Jr., Brad Stein, Mike Stell, and All Others Similarly Situated, Plaintiffs,

v.

LIBERTY NATIONAL LIFE INSURANCE COMPANY, Defendants.

No. 95–1332–Civ–17A.

United States District Court, M.D. Florida, Tampa Division.

March 11, 1999.

Ross Mathew Goodman, Robert Douglas Permenter, Troy Alan Rafferty, Mary E. Pilcher, Levin, Middlebrooks, Thomas, Mitchell, Green, Eachner, Proctor & Papantonio, Pensacola, FL, for plaintiffs.

Peter W. Zinober, D. Michael Pointer, II, Zinober & McCrea, P.A., Tampa, FL, Martha C. Perrin, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, GA, William J. Beasley, Joel E. Dillard, Gregory J. Hare, Baxley, Dillard, Dauphin & McKnight, P.A., Birmingham, Margaret H. Campbell, Law Office of Margaret H. Campbell, Atlanta, GA, for defendants.

## ORDER

KOVACHEVICH, District Judge.

This cause comes before the Court on the following:

1. Plaintiffs' Submissions of Front Pay Calculations for Plaintiffs Agee, Carter, Lee, Stell, and Tuggle Pursuant to the Court's November 20, 1998, Order (Docket No. 366), filed December 30, 1998; and Defendant's Memorandum Opposing Plaintiff's Revised Front Pay Reports (Docket No. 370), filed January 19, 1999.

2. Plaintiffs' Motion for Leave to File a Reply Brief to Defendant's Memorandum Opposing Plaintiff's Revised Front Pay Reports (Docket No. 372), filed February 1, 1999.

3. Plaintiffs' Submission of Forms of Judgment Pursuant to the Court's November 20, 1998, Order (Docket No. 367), filed January 12, 1999; Defendant's Memorandum in Response to Plaintiffs' Submission of Forms of Judgment Pursuant to the Court's November 20, 1998, Order (Docket No. 371), filed January 28, 1999.

As a preliminary matter, Plaintiffs' motion to for leave to file a reply to Defendant's response to their revised front pay reports will be denied. The Local Rules allow the submission of such a response only upon request of the Court. Local Rule 3.01(b). The Court has made no such request here, and declines to do so.

### I. *Front Pay*

In the November 20, 1998, Order in this case [hereinafter "Order"], this Court held that Plaintiffs Agee, Carter, Lee, Stell, and Tuggle could seek front pay awards. The Order noted, however, that the front pay awards calculated by Plaintiffs' expert were unduly speculative. Plaintiffs' expert had allowed Plaintiffs to provide estimates rather than actual figures for their earnings histories, savings plan contributions, and insurance costs, and did not seek documentation to verify these estimates. Moreover, even though Plaintiffs earnings were commission-based and fluctuated widely over the years, some Plaintiffs provided earnings information over only a few years. Despite the historic fluctuations in Plaintiffs' earnings, Plaintiffs' expert assumed a steady upward trend in earnings. Plaintiffs' expert also assumed that each Plaintiff would have contributed enough to the savings plan to receive the maximum 3% match from Defendant, without considering the individual Plaintiffs' contribution histories.

Rather than simply deny Plaintiffs' requests for front pay as being unduly speculative, however, the Court allowed Plaintiffs to provide revised front pay reports. The Order outlined specific requirements for the revised reports to ensure that they would not be speculative. Plaintiffs and their expert were instructed that Plaintiffs' earnings histories must be documented, and that the front pay projections in every area must be based on actual rather than estimated figures and supported by the appropriate documentation. Plaintiffs were directed that calculations of their lost earnings "should take into account the fact that Plaintiffs' earnings have fluctuated over the years and some have exhibited a decline." Order at 24. They were also told that calculations of lost savings plan contributions must be based on Plaintiffs' histories of contribution to the plan.

Plaintiffs have now submitted revised front pay reports, pursuant to the Order, that provide documentary support for their actual earnings histories. Unfortunately, however, these revised reports fail to comply with the specific instructions in the Order in numerous other ways. Plaintiffs' expert estimated lost future earnings without any adjustment for the fluctuations and trends in Plaintiffs' historic earnings. Historic participation in the savings plan was adequately taken into consideration and fully documented only with respect to two Plaintiffs. Plaintiffs provided no documentation to support their claimed insurance costs while employed by Defendant.

*Lost Earnings*

■ Plaintiffs' revised front pay reports estimate lost future earnings by simply taking the earnings from each Plaintiffs final year as a district manager and assuming a steady 2% increase thereafter. This method ignores the wide fluctuations in Plaintiffs' earnings as district managers. For instance, Plaintiff Carter's earnings history as a district manager is below:

| Year | Income Less Business Expenses | Percent Change |
|------|------|------|
| 1986 | $51,867 | |
| 1987 | $52,986 | 2.16% |
| 1988 | $44,401 | −16.2% |
| 1989 | $51,635 | 16.30% |
| 1990 | $54,665 | 5.87% |
| 1991 | $58,754 | 7.48% |
| 1992 | $68,714 | 14.49% |
| 1993 | $59,609 | −13.25% |
| 1994 | $80,312 | 34.73% |

■ Plaintiff Carter's average income between 1986 and 1994 was $58,105. As his earnings history shows, however, his income varied over a wide range during this interval, with the lowest being $44,401 in 1988 and the highest being $80,312 in 1994. Plaintiff Carter's income in 1994 was nearly $12,000 higher than his income in the next highest year, 1992. Rather than take account of these variations, Plaintiffs' expert used 1994 as the base year and assumed that Plaintiff Carter's income would have steadily increased at the rate of 2% per year thereafter had he remained in Defendant's employ. This falsely inflates Plaintiff Carter's expected earnings. Moreover, where a plaintiff was in an occupation characterized by wide fluctuations

in earnings, the failure to adjust for the risk inherent in that occupation renders an estimate of front pay damages "unsound." *Price v. Marshall Erdman & Assocs., Inc.,* 966 F.2d 320, 326–27 (7th Cir.1992).

Likewise, Plaintiffs' expert failed to take account of the trends in Plaintiffs' earnings, an appropriate consideration in calculating lost earnings. *See Buckley v. Reynolds Metals Co.,* 690 F.Supp. 211, 217 (S.D.N.Y.1988). At least one Plaintiff's salary exhibited a downward trend. Plaintiff Agee's earnings history is below:

| Year | Position | Income Less Business Expenses | Percent Change |
|------|------|------|------|
| 1988 | District Manager | $55,947 | |
| 1989 | District Manager | $55,541 | − 0.73% |
| 1990 | District Manager | $50,779 | − 8.57% |
| 1991 | District Manager | $52,911 | 4.20% |
| 1992 | District Manager: January—May Sales Manager: May—December | $47,787 | − 9.67% |
| 1993 | Sales Manager | $51,281 | 7.31% |
| 1994 | Sales Manager: January—July District Manager: July—December | $58,647 | 14.36% |
| 1995 | District Manager | $51,934 | −11.45% |
| 1996 | District Manager: Jan—April | $22,065 | |

Whether the interval during which Plaintiff Agee was demoted to sales manager is included or excluded, Plaintiff Agee's earnings exhibit a distinct downward trend. Assuming a steady 2% per year increase in earnings is therefore inaccurate. Not only did Plaintiffs' expert assume such an increase, but he also used 1991, the year before Plaintiff Agee was demoted to sales manager, as the base year, even though Plaintiff Agee was later re-promoted to district manager. This falsely inflated Plaintiff Agee's expected earnings even further.

The failure to account for fluctuations and trends in Plaintiffs' earnings histories makes the revised front pay reports essentially useless to the Court. Taking a particular year of a person's earnings history as the base year and assuming a steady upward trend thereafter might provide a fairly accurate description of expected future earnings in many, even most, occupations. If the earnings histories of these Plaintiffs show anything, however, it is that Plaintiffs' earnings while employed by Defendant did not show this sort of pat-

tern. The Court cannot rely on estimates of lost earnings based on an inaccurate and unsound method.

*Savings Plan*

Plaintiffs Agee, Carter, Lee, and Stell each seek compensation for the amount Defendant would have contributed to their savings plans. The Court cannot rely on the estimates of lost employer contributions to the savings plan in Plaintiffs' revised front pay reports for two reasons. First, and most importantly, the estimates of lost employer contributions are directly tied to the estimates of lost earnings. Defendant matches half the amount its employees contribute to the savings plan, up to a maximum of 3% of the employee's earnings. Thus, without an accurate estimate as to lost earnings, there is no way for the Court to estimate lost contributions to the savings plan without engaging in speculation.

Second, with respect to Plaintiffs Agee and Lee, Plaintiffs' expert did not comply with the Court's requirement that the revised front pay reports base projections of lost savings plan contributions on the "actual histories of the individual Plaintiffs' previous contributions." Order at 24. Plaintiffs' expert assumes that Plaintiff Agee would have contributed 6% of his earnings to the savings plan, thus receiving a matching contribution from Defendant of 3% of his earnings. This assumption is based on earnings statements from September 1993 through December 1994, which show 6% participation. Defendant, however, provides the affidavit of Defendant's Manager of Employee Benefits stating that Plaintiff Agee participated in the plan only from April 1982 to July 1987 and from October 1993 to April 1995. He was not contributing to the plan at the time he left Defendant's employ in April 1996. Plaintiff Agee provides documentation for his claimed participation in the savings plan only for the period from September 1993 through December 1994. The Court thus has no evidence to controvert Defendant's assertion that Plaintiff Agee participated in the plan for only slightly more than a year and a half in his last nine years with Defendant. It certainly has not been provided with sufficient evidence to support a claim of full participation in the savings plan.

Plaintiffs' expert concedes that Plaintiff Lee did not provide complete documentation for his claimed level of participation in the savings plan. However, Plaintiffs' expert took the average level of participation for the periods for which Plaintiff Lee provided documentation and assumed that level of participation. The affidavit of Defendant's Manager of Employee Benefits, however, shows that Plaintiff Lee participated in the plan less than half of his final nine years with Defendant, and was not participating at all in the plan when he retired. Averaging Plaintiff Lee's level of participation during the times in which he did participate, without accounting for the significant amount of time during which he did not participate, thus significantly overstates Plaintiff Lee's level of participation in the savings plan.

Defendant contends the level of savings plan participation claimed by Plaintiffs Carter and Stell is inaccurate as well. Each of these Plaintiffs, however, supplied the Court with documentation adequate to support his claims. Defendant disputes the assumption by Plaintiffs' expert that Carter would have participated fully in the savings plan, because there were two periods in which Plaintiff Carter did not participate. One of these periods, however, ended more than six years before Plaintiff Carter's termination, and the other was a portion of the time he was out on disability leave. Plaintiff Carter otherwise participated fully in the savings plan, and was participating in it at the time he left Defendant's employ. It was therefore not unreasonable for Plaintiffs' expert to assume Plaintiff Carter would have participated fully in the savings plan.

Plaintiff Stell provided documentation for his savings plan participation for the entire time he was a district manager. Defendant disputes the assumption by Plaintiffs' expert that Plaintiff Stell would have participated fully in the savings plan, however, because it is based only on his level of participation in the savings plan in the years 1990 through 1994. Defendant complains that Plaintiffs' expert should have taken the average of Plaintiff Stell's participation levels over the full time he was a district manager.

While the parties might disagree over the estimates of Plaintiffs Carter and Stell's future participation in the savings plan, the Court has a basis on which to evaluate those estimates, because those Plaintiffs provided documentation for their claimed level of participation. Unfortunately, however, the Court cannot even reach the question of what level of participation in the savings plan should be assumed, because the amount of Defendant's contribution at any level or participation depends on earnings. Without a reliable projection of Plaintiffs' earnings, the Court would only be speculating if it were to estimate Defendant's contributions to the savings plan.

*Pension and Social Security*

The flaws in the method of calculating Plaintiffs' expected future earnings carry over into their claims for lost Social Security and pension contributions as well. The amount of Defendant's contribution in each of these areas depends on the amount of earnings. To the extent that Plaintiffs' earnings projections are inaccurate or speculative, their projections of Social Security and pension contributions will be as well.

*Insurance*

The Order noted that one of the reasons the numbers provided by Plaintiffs' expert were unreliable was that Plaintiffs' expert had relied on estimated figures with no supporting documentation. The Order used as an example of this the failure of Plaintiffs' expert to verify Plaintiffs' claims regarding the cost of health insurance while they were employed by Defendant. Order at 15. Despite this flaw having been pointed out and underlined for Plaintiffs and their expert, not one of the revised front pay reports provides any documentation to show Plaintiffs' insurance costs while they were employed by Defendant. The Court thus has no way of knowing whether Plaintiffs' claims for the increased out-of-pocket cost for insurance are accurate, or whether they are still based on estimates.

The Court is mindful of the fact that Plaintiffs have already been significantly harmed by Defendant's willful and unlawful discrimination. It is unfortunate that Plaintiffs must now be further harmed because of the carelessness of those who are charged with representing their interests before this Court. However, Plaintiffs did not present at trial the testimony necessary to determine front pay, and the Court cannot use the revised front pay calculations provided by Plaintiffs' expert. The calculations are speculative and inaccurate, and they do not comply with the clear requirements in the Court's earlier Order. Plaintiffs were given a second opportunity to provide accurate front pay projections to the Court, and were provided specific instructions as to what the Court wanted, but failed to take advantage of the opportunity given to them.

Nor can the Court calculate front pay damages without the expert's report. The sort of mathematics necessary to determining the projected path of earnings histories characterized by wide fluctuations, accounting for upward and downward trends in earnings, and reducing the resulting figures to present value is commonly used by economists and accountants. It is, however, beyond the expertise of this Court. It is not the province of the Court to engage in complex mathematics. With-

out a useful projection of lost future earnings, the Court has no basis to determine the elements of front pay that are earnings-dependant. In the one area that does not depend on projection of future earnings, insurance benefits, Plaintiffs have not provided the Court any documentation to show how much insurance cost them while employed by Defendant. For that reason, the Court must deny Plaintiffs' request for front pay.

## II. Forms of Judgment

The November 20, 1998, Order also required Plaintiffs to confer with Defendants and submit proposed final judgments consistent with that Order for Plaintiffs Ganus, Hipp, Sentell, Stein, and Swanson. Plaintiffs prepared proposed final judgments for those Plaintiffs, the Plaintiffs seeking front pay, and several Plaintiffs who were dismissed from the case prior to trial. Defendant disputes several matters regarding Plaintiffs' submission of forms.

First, Plaintiffs included an award of costs against Defendants in the proposed orders of judgment for the Plaintiffs who prevailed, but did not include an award of costs in the proposed orders of judgment against the Plaintiffs who lost. As the prevailing party, Defendant is entitled to recover its costs from those Plaintiffs. Fed.R.Civ.P. 54(d)(1). The proposed orders of judgment against Plaintiffs Ganus, Swanson, and Sentell will therefore be modified to include an award of costs to Defendant.

Second, Defendant questions whether orders of judgment against Plaintiffs dismissed from the case prior to trial are necessary. They are not, and the Court will therefore disregard the proposed orders of judgment against Plaintiffs Bill Bush, Ray Bush, Nick Coris, Jerry Dowling, and Harold Young.

Finally, the parties disagree as to the amount of punitive damages to which

Plaintiff Hipp is entitled. The parties agree that under *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554 (11th Cir.1997), Plaintiff Hipp is not entitled to "piggyback" his ADEA claim. The parties also agree that because the jury found that Plaintiff Hipp had suffered an adverse employment action within 365 days before his administrative charge, but not within 300 days before it, Plaintiff Hipp is not entitled to liquidated damages under the ADEA. There is therefore no bar to his receiving punitive damages under his state law age discrimination claim.

■ The issue is what amount of punitive damages Plaintiff Hipp should receive. Plaintiff Hipp argues that the jury's punitive damage award of $5 million should be awarded in full. Florida Statutes Section 760.11(5) caps punitive damages under the Florida Civil Rights Act at $100,000. Plaintiff Hipp argues that this cap is subject to judicial discretion, and that this Court should create a public policy exception to the statutory cap where the discrimination is willful. Plaintiff Hipp's argument is unsupported and without merit. The statutory cause of action created by the Florida Civil Rights Act makes no allowance for judicial discretion, but states plainly that "the total amount of punitive damages under this section to an aggrieved person *shall not* exceed $100,000." § 760.11(5) (emphasis added). The statute leaves no room for judicial discretion. It is not the prerogative of this Court to override the express will of the Legislature. Plaintiff Hipp's public policy argument would be better directed to the Florida Legislature.

Plaintiff Hipp argues ill the alternative that the statutory cap on punitive damages violates the Florida Constitution by interfering with the rights to trial by jury and access to the courts. This argument is likewise without merit. Plaintiff Hipp's argument is based on caselaw finding tort reform statutes that abrogated plaintiffs' common law rights to punitive damages

unconstitutional, particularly *Henderson v. Alabama Power Co.*, 627 So.2d 878 (Ala. 1993). These cases are inapposite. The cause of action under which Plaintiff Hipp proceeded is a statutory cause of action created by the Florida Legislature. There was no common law cause of action for age discrimination, and no right to recover punitive damages for such discrimination until the Florida Legislature created one. More directly on point in this regard are *Davis v. Omitowoju*, 883 F.2d 1155, 1161–65 (3d Cir.1989) and *Boyd v. Bulala*, 877 F.2d 1191, 1196 (4th Cir.1989), each of which held that statutory caps on punitive damage awards do not violate the right to trial by jury. "If a legislature may completely abolish a cause of action without violating the right to trial by jury, . . . it permissibly may limit damages recoverable for a cause of action as well." *Boyd*, 877 F.2d at 1196. The statutory cap of $100,000 must therefore be applied to Plaintiff Hipp's punitive damages award. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Leave to File a Reply Brief to Defendant's Memorandum Opposing Plaintiff's Revised Front Pay Reports (Docket No. 372) be **DENIED;** that Plaintiffs **SHALL NOT** receive front pay damages; and that the award of punitive damages to Plaintiff DAVID HIPP be **REMITTED** to $100,000 in accordance with the statutory limit on punitive damages contained in Florida Statutes Section 760.11(5).

**DONE and ORDERED.**