Cupp, J.,
concurring.
{¶ 115} I am in agreement with the majority opinion. However, I believe the question of whether the statutory limitation on noneconomic tort damages contravenes the right to a trial by jury under the Ohio Constitution deserves some additional consideration.
{¶ 116} There is no disagreement that the right to a trial by jury is a fundamental aspect of our jurisprudence and a cherished right. See, e.g., Butler v. Jordan (2001), 92 Ohio St.3d 354, 370-371, 750 N.E.2d 554. This long-held right derives from the Magna Carta and was applied, before Ohio became a state, to the Northwest Territory: “No man shall be deprived of his liberty or property, but by the judgment of his peers, or the law of the land * * *.” Article 2, Northwest Ordinance of July 13, 1787. A component of that fundamental right is that juries are responsible for determining all factual issues, including compensatory damages. Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 422, 633 N.E.2d 504.
{¶ 117} Similarly, there is no disagreement that there are some limits to the right to trial by jury. The right to a trial by jury is guaranteed only for those *493 causes to which the right attached at common law when the Ohio Constitution was adopted in 1802. Belding v. State ex rel. Heifner (1929), 121 Ohio St. 393, 169 N.E. 301, paragraph one of the syllabus. Negligence and intentional-tort actions, for example, fall within the trial-by-jury guarantee of Section 5, Article I, whereas will-contest and divorce actions do not. Arrington v. DaimlerChrysler Corp., 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 24; State ex rel. Kear v. Lucas Cty. Court of Common Pleas (1981), 67 Ohio St.2d 189, 21 O.O.3d 118, 423 N.E.2d 427 (will-contest actions); Koepke v. Koepke (1989), 52 Ohio App.3d 47, 48, 556 N.E.2d 1198 (divorce).
{¶ 118} None of this, however, addresses the right-to-jury issue presented in this case: Is the scope of the right to trial by jury so extensive as to preclude the law-making branch of constitutional government from altering or limiting the amount of damages available to a party prevailing in a common-law cause of action?
{¶ 119} An analysis of this issue must begin with the reason civil juries were considered important in our nation’s early history. At the time the written constitutions were adopted, a primary purpose of the trial by jury was to safeguard the rights of individual citizens, not against legislative overreaching, but from judicial bias and judicial reexamination of jury-determined facts.
{¶ 120} The concern of biased and corrupt judges was expressed as early as colonial days. This fear arose from the colonists’ concern that the English lawyers appointed by the king to preside over colonial courts would have a greater allegiance to imperial rule than to impartial justice. Robert L. Jones, Finishing a Friendly Argument: The Jury and the Historical Origins of Diversity Jurisdiction (2007), 82 N.Y.U.L.Rev. 997, 1028-1030. The trial by jury was perceived as a means to ensure the administration of impartial justice free from imperial interference.
{¶ 121} The writings of Alexander Hamilton and Thomas Jefferson also reflect the perception that judges in the 18th century had a partisan bias. In the Federalist Papers, for example, Alexander Hamilton, defending against opposition to the proposed federal Constitution because of its lack of a guarantee of civil jury trial, notes the virtue of the right to a trial by jury:
{¶ 122} “The excellence of the trial by jury in civil cases appears to depend on circumstances foreign to the preservation of liberty. The strongest argument in its favor is, that it is a security against corruption. As there is always more time and better opportunity to tamper with a standing body of magistrates than with a jury summoned for the occasion, there is room to suppose that a corrupt influence would more easily find its way to the former than to the latter.” The Federalist No. 83 (Luce Ed.1976) at 544.
*494 {¶ 123} Thomas Jefferson echoed Hamilton’s sentiments, commenting that “permanent judges acquire an Esprit de corps, that being known they are liable to be tempted by bribery, that they are misled by favor, by relationship, by a spirit of party, by a devotion to the Executive or Legislative; * * * and that the opinion of 12 honest jurymen gives still a better hope of right.” Letter of July 19, 1789 from Thomas Jefferson to the Abbe Arnoux (reprinted in 5 Kurland & Lerner, The Founders’ Constitution (1986) 364). See also Parklane Hosiery Co., Inc. v. Shore (1979), 439 U.S. 322, 343, 99 S.Ct. 645, 58 L.Ed.2d 552 (Rehnquist, J., dissenting) (the right to a jury trial is an “important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary”).
{¶ 124} And the concern of judicial overreaching was not unfounded. As noted by United States Supreme Court Justice Black in his dissent in Cohen v. Hurley (1961), 366 U.S. 117, 139, 81 S.Ct. 954, 6 L.Ed.2d 156, the English judiciary had a propensity “to make ‘short shrift’ of’ jurors, subjecting them to beratement, fines, and indefinite imprisonment in the event of a “wrong verdict.” These abuses were among those that “led, first, to the colonization of this country, later, to the war that won its independence, and, finally, to the Bill of Rights.” Id. at 140, 81 S.Ct. 954, 6 L.Ed.2d 156.
{¶ 125} Finally, Ohio constitutional history also reflects that the right to a trial by jury was in response to a concern regarding a biased judiciary. During the debates at the 1850 Ohio Constitutional Convention, A. Harlan, a delegate from Greene County, read from a petition from Richard Randolph. In the petition, Randolph traced juries to the Saxon age, “when they formed an integral part of the Sheriffs county court.” But the jury evolved into “a happy and patriotic adaptation to elude the force of oppression, by the decrees of venal and subservient judges,” and was at the time the “only means then devised to resist tyranny and the tools of tyrants; — and it thus became rather the palladium of their civil rights than the best form of judicature.” 2 Reports of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Ohio, 1850-1851 (1851) 191.
{¶ 126} Consequently, the right to trial by jury was regarded as a legal mechanism to protect the rights of individual citizens from an overreaching judiciary. Admittedly, relying on historical information to interpret a contemporary constitutional question is not without difficulty. William E. Nelson, History and Neutrality in Constitutional Adjudication (1986), 72 Va.L.Rev. 1237, 1282. Nonetheless, the foregoing discussion indicates that the right to a trial by jury was intended to guard against judicial bias rather than as a limit on the ability of the legislature to act within its constitutional boundaries.
*495 {¶ 127} Although the right to trial by jury is of great constitutional significance, this state’s Constitution also provides that all legislative power of the state is vested in, and solely exercised by, the General Assembly. Section 1, Article II, Ohio Constitution; State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty. (1929), 120 Ohio St. 464, 473, 166 N.E. 407. Statutes crafted by the General Assembly establish the laws and public policies of the state. Chambers v. St. Mary’s School (1998), 82 Ohio St.3d 563, 566, 697 N.E.2d 198 (General Assembly determines public policy); Akron Metro. Park Dist. for Summit Cty., 120 Ohio St. at 479, 166 N.E. 407 (same).
{¶ 128} The constitutional grant of authority at Section 1, Article II vests in the General Assembly the plenary power to enact any law except those that conflict with the Ohio or United States constitutions. State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas (1967), 9 Ohio St.2d 159, 162, 38 O.O.2d 404, 224 N.E.2d 906. The General Assembly may make amendments, or create exceptions, to previously enacted legislation, such as forbidding things previously permitted, and it may modify or entirely abolish common-law actions. Strock v. Pressnell (1988), 38 Ohio St.3d 207, 214, 527 N.E.2d 1235; Thompson v. Ford (1955), 164 Ohio St. 74, 79, 57 O.O. 96, 128 N.E.2d 111; Pohl v. State (1921), 102 Ohio St. 474, 476, 132 N.E. 20, reversed on other grounds by Bartels v. Iowa (1923) 262 U.S. 404, 43 S.Ct. 628, 67 L.Ed. 1047; Washington Cty. Dept. of Human Servs. v. Rutter (1995), 100 Ohio App.3d 32, 35, 651 N.E.2d 1360. Such legislative action is constitutionally permitted because, although “[rjights of property cannot be taken away or interfered with without due process of law * * *[,] there is no property or vested right in any of the rules of the common law, as guides of conduct, and they may be added to or repealed by legislative authority.” Leis v. Cleveland Ry. Co. (1920), 101 Ohio St. 162, 128 N.E. 73, paragraph one of the syllabus.
{¶ 129} The United States Supreme Court has determined that the alteration of the common law is not proscribed by the federal Constitution either:
{¶ 130} “A person has no property, no vested interest, in any rule of the common law. * * * Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prohibited by constitutional limitations.” Munn v. Illinois (1876), 94 U.S. 113, 134, 24 L.Ed. 77.
{¶ 131} In summary, it is long-settled constitutional law that it is within the power of the legislature to alter, revise, modify, or abolish the common law as it may determine necessary or advisable for the common good.
{¶ 132} The power to alter or abolish a common-law cause of action necessarily includes the power to modify any associated remedy. See, e.g., State v. Barlow *496 (1904), 70 Ohio St. 363, 374-375, 71 N.E. 726 (remedies may be altered legislatively); Stine v. Atkinson (1942), 69 Ohio App. 529, 533, 24 O.O. 264, 44 N.E.2d 372 (the elements to a cause of action include a remedy). See also Pacific Mut. Life Ins. Co. v. Haslip (1991), 499 U.S. 1, 39, 111 S.Ct. 1032, 113 L.Ed.2d 1 (Scalia, J., concurring in judgment) (the legislature has the authority to restrict or abolish the common-law practice of punitive damages). Indeed, it would be illogical that, while the right to trial by jury does not prevent the legislature from altering or abolishing a cause of action, it nevertheless prevents the legislature from defining by statute the remedies available for a cause of action.
{¶ 133} Still, the dissent echoes the plaintiffs assertion that the amount of damages recoverable under a common-law cause of action cannot be limited by action of the legislature because determining the amount of damages is reserved to the jury by the constitutional right to trial by jury. However, we are provided no historical analysis to support this contention, nor are we directed to any relevant case precedent with that analysis.[10] Nor have I found any. The historical information that is available does not support the contention that the right to a trial by jury acts as a limit to constitutionally exercised legislative action.
{¶ 134} The absence of any analysis and precedent rationally leads to the conclusion that the legislature’s law-making power is not so limited, provided the litigant retains the right to have the jury determine the amount of damages to the extent the damages are legally available. Legislative action, however, may alter or limit what damages the law makes available and legally recoverable. In doing so, the General Assembly does not trespass upon the right to jury trial.
{¶ 135} Federal courts, interpreting the United States Constitution, have also concluded that a legislature’s constitutional authority to create, alter, or abolish law includes the ability to alter or limit the kind and amount of damages available to a prevailing party, without running afoul of the right to a jury trial protected by the Seventh Amendment to the United States Constitution. Davis v. Omitowoju (C.A.3, 1989), 883 F.2d 1155, 1159-1165 (medical malpractice); Boyd v. Bulala (C.A.4, 1989), 877 F.2d 1191, 1196 (medical malpractice); Franklin v. Mazda Motor Corp. (D.Md.1989), 704 F.Supp. 1325, 1330-1334 (pain and suffering).[11] Admittedly, federal decisions interpreting state damages limitations under *497 the Seventh Amendment are not controlling on this court. The Seventh Amendment does not apply to the states. Gasperini v. Ctr. for Humanities, Inc. (1996), 518 U.S. 415, 432, 116 S.Ct. 2211, 135 L.Ed.2d 659. But such decisions are strongly persuasive.
{¶ 136} In light of the General Assembly’s constitutionally granted, plenary legislative power; the lack of a vested right to the rules of the common law; the long-settled law that the General Assembly’s power extends to the alteration or abolition of common-law causes of actions, including those to which the right of a trial by jury attaches; the complete lack of historical support or reasoned precedent cited by the plaintiff and the dissents; and the strong presumption in favor of the constitutionality of legislative enactment, I conclude that the Constitution and the right to trial by jury do not implicate the General Assembly’s plenary, constitutional law-making power to define what damages are available in a common-law cause of action, including reasonable limitations on such damages.
{¶ 137} Some may think limitations on certain damages to be unwise legislative policy-making, but it is beyond the authority of any court to write into the Constitution that which was not installed there by the framers and ratified by the people. I conclude, therefore, that the noneconomic-damages limitations of R.C. 2315.18 do not violate the right to trial by jury of Section 5, Article I of the Ohio Constitution.
Lundberg Stratton, O’Connor, and Lanzinger, JJ., concur in the foregoing opinion.

. Prior Ohio cases from which this assertion is partially drawn provide no analysis, historical or otherwise, to validate the assertion. From this I am forced to conclude that the idea that the Constitution’s right to jury trial somehow proscribes the General Assembly from altering remedies for a common-law cause of action is of recent, not historical, origin.

. The United States Supreme Court has not specifically addressed the issue of whether state statutory damages limitations are valid. It has, however, acknowledged the Davis and Boyd dispositions upholding the constitutionality of the postverdict application of state statutory limita *497 tions in diversity eases. Gasperini v. Ctr. for Humanities, Inc. (1996), 518 U.S. 415, 429, 116 S.Ct. 2211. 135 L.Ed.2d 659. fn. 9.